WILLIAM D. BRACKETT, Plaintiff, *v.* F. THOMAS SEDLACEK *et al.*, Defendants—(Mid-America National Bank of Chicago, Intervenor-Appellant; Stuart Kaiserman, Receiver-Appellee; Lawrence Swibel, Appellee; Butler Products Company, Intervenor-Appellee).

First District (1st Division)   Nos. 82—2373, 82—2469 cons.

Opinion filed August 8, 1983.

Feiwell, Galper & Lasky, of Chicago (Daniel C. Meenan, Jr., Craig P. Ehrlich, and Nancy M. Barrett, of counsel), for appellant.

Jenner & Block, of Chicago (Ronald R. Peterson and Alan Raphael, of counsel), for appellee Butler Products Co.

Hopkins & Sutter, of Chicago (Lawrence B. Swibel and Albert C. Maule, of counsel), for appellees Stuart Kaiserman and Lawrence Swibel.

JUSTICE GOLDBERG delivered the opinion of the court:

This appeal presents a controversy regarding the payment of expenses resulting from a receivership. The trial court ordered a dissolution of OSLA Communication Services Corporation (Osla) and appointed Stuart Kaiserman as its receiver. Mid-America National Bank of Chicago (Mid-America) appeals from two orders requiring the payment of receivership expenses.

Mid-America was a secured creditor of Osla, having loaned it $350,000. In November 1976, Mid-America perfected a security interest in a van and in certain electronic equipment belonging to Osla. In October 1978, Osla was declared to be in default, and Mid-America instituted a replevin action to recover its collateral from the premises of Butler Products Company (Butler). This action, however, was not pursued to completion.

Osla was in the business of videotaping basketball games for television stations. At the time of the dissolution, there were a number of contracts for services outstanding. The receiver was authorized to carry on the business, and did so for a short time. The receiver attempted to carry out Osla's contract obligations and to sell the business as a going concern. Mid-America did not file any objections to this continued operation of Osla. Mid-America attempted to assist the receiver by providing the names of interested parties as possible purchasers.

No sale materialized. On June 16, 1980, the trial court authorized the receiver to proceed with an auction of Osla's assets. In addition, the trial court ordered that any proceeds derived from the auction were to be deposited with the trial court until all administrative expenses of the receivership were satisfied. On the same day, Mid-America filed a petition to intervene in the action and a complaint for a declaratory judgment to establish its rights as a lien creditor with a perfected security interest in the van and the other equipment. Al-

though Mid-America did not formally intervene until June 16, 1980, it was fully advised of the actions of the receiver from the time of his appointment.

On July 23, 1980, the receiver conducted an auction sale of Osla's property. Twenty-two bidders were present, including Mid-America and RCA, another secured creditor. Mid-America and RCA bid $70,500 and $78,000 respectively, not in cash but as a credit upon their respective liens. As a result, the auction generated only $14,795 in actual cash. The receiver's final report indicates that, if the secured creditors had not bid their liens, an additional $148,000 in cash bids would have been accepted by the receiver. The receiver testified at a hearing on fees that he would not have conducted the auction had he known the secured creditors intended to bid by a credit upon their liens.

On January 20, 1981, the receiver filed his final report and a motion for payment of fees. The receiver's attorney also filed a motion for payment of fees. The receiver's final report listed a balance of $598.27 in the receivership bank account. Both fee motions included detailed time and activity summaries. The receiver requested a total of $13,029 in fees. In addition to his own fees, the receiver requested $44,007.54 in administrative expenses, including $40,000 for a claim for rent filed by Butler. The receiver's attorney requested a $9,006.25 in fees.

In July 1981, RCA entered into a settlement agreement with the receiver. It paid $16,000 for administrative expenses. Of this, $5,000 was applied to Butler's rent claim, $3,000 was applied to the receiver's fee, $3,000 to the receiver's attorney fees, and $1,803.50 was applied to the claim of an insurance company.

Subsequently, on March 8, 1982, both the receiver and his attorney filed amended petitions for fees. The receiver requested $12,000 in his petition, representing a net increase of $1,971. The attorney sought an additional $6,000.

On August 25, 1982, the trial court held a hearing on the petitions for fees filed by the receiver and his attorney. The receiver and his attorney testified, as did David Murphy, attorney for RCA. Mid-America did not offer any evidence to support its objections to the fee petitions. On August 31, 1982, the trial court, having heard the arguments of the parties, and having considered the factual and legal memoranda submitted, entered an order requiring Mid-America to pay the receiver and his attorney $7,500 each and to pay $1,803.50 to an insurance company. On September 14, 1982, after a second hearing, the trial court entered another order requiring Mid-America to

pay $20,000 to Butler. Mid-America has appealed from both orders.

Mid-America argues that the trial court erred in requiring it to pay a portion of the fees and expenses requested by the receiver and his attorney. Mid-America also urges that it should not have been required to pay $20,000 to Butler for use and occupation.

## I

■ Payments of fees and administrative expenses of a receiver and his attorney are usually made from the income generated by the receivership property. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1043, 389 N.E.2d 182, 187, *appeal denied* (1979), 79 Ill. 2d 617.) Where this income is insufficient to pay the receiver and his attorney, an appropriate share of these expenses will be borne by a lienholder who consents to the appointment of the receiver. *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1044.

■ Here, Mid-America was fully aware of the appointment of the receiver, but made no objection thereto. In fact, Mid-America accepted the services of the receiver. We find, therefore, that the trial court properly charged Mid-America with a portion of the fees and expenses requested by the receiver and his attorney.

Mid-America contends it was charged with an amount greater than its appropriate share. Mid-America was ordered to pay $7,500 each to the receiver and to his attorney. The original petitions for fees filed by the receiver and his attorney sought $13,029 and $9,006.25, respectively.

■ The test for determining whether an award of receiver's fees is excessive is whether there has been a clear abuse of discretion. (*Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 7, 419 N.E.2d 492.) The burden rested initially upon the receiver and his attorney to present sufficient evidence of the reasonableness of the fees to allow the trial court (*Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 7):

> "to make a reasoned decision based on the applicable law. *** In the typical case, where a petition for fees is supported by a time sheet which details the receiver's activities, and which shows other factors relevant to an award of fees, this can be sufficient to establish that the fees requested are reasonable."

When sufficient evidence of reasonableness has thus been presented, the burden shifts to the respondent to show that the fees are not reasonable. *Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 7.

■ In the instant case, both the receiver and his attorney furnished the trial court with detailed time and activity summaries. In each case, the work for which fees were requested was carefully identified. We conclude, therefore, that the trial court did not abuse its discretion in the amount of fees awarded to the receiver and his attorney. Since Mid-America did not present any evidence to show that the fees requested were unreasonable, or that the portion charged to them was greater than their fair share, "there is nothing to rebut the trial court's conclusion that the [receiver and attorney] fees were reasonable." *Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 8.

## II

■ The petition filed by the receiver included a request for payment of $40,000 to Butler for use and occupancy of premises owned by Butler during the period of the receivership. However, as Mid-America points out, Butler actually claimed it should receive rent of $30,000 plus expenses of $4,300 for cleaning the premises. The trial court ordered Mid-America to pay Butler $20,000. Mid-America argues that the trial court erred in ordering this payment because Butler presented no evidence as to the reasonable value of any storage services it provided.

Mid-America concedes it is willing to pay reasonable storage charges. Thus, as Butler correctly points out, the only remaining issue is whether the trial court's award of $20,000 to Butler was manifestly against the weight of the evidence. *Peterson v. Prince* (1981), 102 Ill. App. 3d 220, 225, 430 N.E.2d 297.

Mid-America argues for the first time in this court that Butler's claim was unreasonable. Throughout the trial, and in its prehearing memorandum, submitted prior to the September 14, 1982, hearing on Butler's claim, Mid-America did not contest the amount of Butler's claim. It contended simply that the receiver, rather than Mid-America, should pay the claim. Mid-America's failure to raise the issue in the trial court or offer evidence concerning the reasonableness of the rental claim precludes it from raising the point in this appeal. See *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550, 449 N.E.2d 65, and cases there cited.

In the interest of completeness, however, we add that Butler did in fact present sufficient evidence of the reasonableness of its claim so as to put the burden upon Mid-America. Although Mid-America did not present a transcript of the September 14, 1982, hearing to this court, Butler did append a copy of the applicable lease to its prehear-

ing memorandum. In the absence of specific evidence of reasonable value of the use and occupancy of the premises it is presumed that the fair rental value is the amount of rent fixed in the lease. (*In re Schnabel* (7th Cir. 1980), 612 F.2d 315, 318. See also Annot., 43 A.L.R. 734 (1926).) Mid-America presented no evidence to rebut this presumption.

In its reply brief, Mid-America urges that Butler failed to consider $5,000 which it received as part of the settlement with RCA and $2,000 which was paid to Butler by the receiver. The parties all agree that these payments were made to Butler. However, there was no evidence, and this court is totally uninformed, as to whether the trial court in reducing payment from Mid-America to Butler to $20,000 has already given credit for these payments. Consequently, we find ourselves unable to reduce the amount to be paid by Mid-America from the amount of $20,000 allowed by the trial court.

Mid-America's reliance upon *Makeel v. Hotchkiss* (1901), 190 Ill. 311, 60 N.E. 524, and *Darling v. Cornstalk Products Co.* (E.D. Ill. 1931), 54 F.2d 670, is misplaced. Both cases involve unusual circumstances not found in the instant case.

In *Makeel*, a receiver sought payment of expenses incurred in operating a hotel management company after expiration of a lease which stated his rights were subject to the rights of a purchaser at a foreclosure sale. The party sought to be charged, Hotchkiss, had not consented to the appointment of Makeel as receiver, but had commenced and prosecuted to foreclosure and sale another suit in another court, in which he had sought the appointment of a receiver of his own.

In the instant case, however, Mid-America impliedly consented to the appointment of the receiver by sitting back while the mechanism of the receivership operated and also by participating at the auction conducted by the receiver. Mid-America admits it was fully aware of the activities of the receiver from the inception of the receivership. Thus, Mid-America was properly charged with a portion of Butler's use and occupancy claim.

In *Darling*, a case involving Federal receivership law, a warehouseman sought to have his claim for storage charges accorded a priority equal to that of the receiver's certificates and other expenses of administration. The charges stemmed from the storage of a comparatively small amount of raw material which had been placed in the warehouseman's care prior to the appointment of the receiver. The expense was manifestly not one authorized by the receiver. In addition, the warehouseman had waited 15 months before asserting his

claim, during which time the charges sought had grown to an amount over 2½ times the value of the goods stored. Lastly, there had been no showing that the storage of this small amount of raw material had in any way benefited the fund sought to be charged.

Here, Butler's claim for use and occupancy was timely filed. The claim stemmed from the storage of the entire physical assets of Osla corporation, a fact which could not have escaped Mid-America's attention. The amount sought by Butler was substantially less than the value of the stored equipment in which Mid-America held a security interest. Lastly, the storage of this equipment inured to the benefit of Mid-America.

Thus neither of these cases provides any support for Mid-America's attempt to avoid payment of that portion of the use and occupancy claim which the trial court in its discretion ordered them to pay.

For the foregoing reasons, the orders appealed from are affirmed.

Orders affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.