**In re 400 MADISON AVENUE LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 96–B–45776 (PCB).**

United States Bankruptcy Court, S.D. New York.

Oct. 14, 1997.

Kleinberg, Kaplan, Wolff & Cohen, P.C. by David Parker, Lauri K. Goodwyn, New York City, for David Parker as Receiver.

Janvey, Gordon by Hiram D. Gordon, New York City, for Debtor.

Herrick Feinstein, L.L.P. by Andrew C. Gold, New York City, for Madison 47–48 Equities LLC.

Carolyn Schwartz, United States Trustee by Paul Schwartzberg, New York City.

*MEMORANDUM DECISION APPROV-ING STIPULATION AUTHORIZING RETENTION OF ATTORNEYS BY RECEIVER LEFT IN POSSESSION UNDER CODE § 543(d) AND CER-TAIN OTHER RELIEF*

PRUDENCE CARTER BEATTY,
Bankruptcy Judge.*

At the time the debtor's Chapter 11 petition was filed, a receiver was in possession of the debtor's real property, having been appointed in a pending foreclosure action. Pursuant to agreement between the debtor and its secured creditor, the receiver was left in possession, as permitted by Bankruptcy Code ("Code") § 543(d)(1).[1] The receiver made application to this Court to continue the retention of his prepetition counsel. His counsel was owed fees for services rendered during the month preceding the filing of the Chapter 11 petition.

The U.S. Trustee objected to the retention on the grounds that the proposed attorneys were not disinterested within the meaning of Code § 101(14) because the firm was a creditor of the debtor as a result of its unpaid prepetition fees. The U.S. Trustee argued that the retention was therefore barred under Code § 327(a) because of a lack of disinterestedness. After the U.S. Trustee filed a written objection to the retention application on these grounds, the Court advised the U.S. Trustee that the Court was of the view that the objection was ill-founded. The U.S. Trustee confirmed by letter its intention to stand on its objection and stated that it believed that its objection was mandated by the decision in *In re 245 Associates, LLC,* 188 B.R. 743 (Bankr.S.D.N.Y.1995) (Bernstein, J.).[2] In short, the U.S. Trustee viewed the matter as one of policy.

Several weeks after taking this seemingly unalterable policy position, the U.S. Trustee agreed to the retention pursuant to a stipulation under which the matter was resolved by allowing the receiver to transfer an amount equal to the amount of the counsel's unpaid prepetition fees to the mortgagee. The stip-

---

* Formerly known as Prudence Beatty Abram.

1. Code § 543(d)(1) provides as follows:

   "(d) After notice and hearing, the Bankruptcy Court—
      (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors, and, if the debtor is not insolvent, of equity security holders would be better served by permitted a custodian to continue in possession, custody, or control of such property * * *."

2. It was certainly appropriate for the Office of the United States Trustee to rely on *In re 245 Associates, LLC* in objecting to the Receiver's application *if* it found the decision persuasive. However, the decision cannot be viewed as controlling law. The authorities are in agreement that a decision issued by a single bankruptcy judge in a multi-judge bankruptcy court is not binding on the other bankruptcy judges. See, e.g., *In re Suburban Motor Freight,* 134 B.R. 617, 626 (Bankr.S.D.Ohio 1991) (The doctrine of stare decisis does not bind one bankruptcy court to follow the decision of another bankruptcy court, even if that decision is from another bankruptcy judge in the same district). Indeed, the decision of a single district judge in a multi-judge district has been held not to be binding on the bankruptcy court. See, e.g., *In re Gaylor,* 123 B.R. 236, 240–242, (Bankr.E.D.Mich.1991)(Since a decision of an individual district judge does not bind other district judges in the same district, the doctrine of stare decisis cannot be invoked to require the bankruptcy court to follow the decision of a single district judge); and *In re Rheuban,* 128 B.R. 551, 554–555 (Bankr.C.D.Cal. 1991). Thus, in this district, which has both a multi-judge bankruptcy court and a multi-judge district court, only decisions of the Second Circuit Court of Appeals are controlling.

ulation then provided for the mortgagee to pay counsel and take an assignment of counsel's claim. To this Court the solution embodied in the stipulation is objectional as a mere sleight of hand and one that should not become standard practice. Because the Court would have approved the retention without the necessity of this convoluted device, the Court has concluded that it should sign the stipulation and issue this opinion to explain its reasoning due to the significance of the issue in real estate Chapter 11 cases.

This is only the Court's second decision interpreting and applying Code § 543, which deals with turnover by custodians in possession of the debtor's property. In a decision written over thirteen years ago, this Court considered whether an Article 7A administrator was a custodian required to turn over the debtor's real property and concluded the administrator was not. See *Matter of Kennise Diversified Corp.*, 34 B.R. 237 (Bankr. S.D.N.Y.1983). That decision charted new territory as the Bankruptcy Code was but five years old and the definition of custodian was as yet untested with regards to Article 7A administrators.

This case, in contrast, presents no *tabula rasa*. Rather it requires a plain reading of Code § 327(a) and recharting old territory with respect to Code § 543. The predecessors to Code § 543 under the former Bankruptcy Act, §§ 2a(21), 69d, 257(Chap.X) and 507(Chap.XII) and the related former Bankruptcy, Rules, Rules 201, 209, 212 and 218, are the Rosetta Stone to understanding the section. No doubt the drafters of the Bankruptcy Code considered the practices under the Bankruptcy Act so well understood that it would puzzle them to find that eighteen years later no memory remains of what was once standard.

■ Based on the following findings of fact and conclusions of law, this court holds that Code § 327 does not apply to the retention of attorneys by a receiver retained in

possession under Code § 543(d)(1). Since Code § 327(a) with its requirement of disinterestedness does not apply, the prepetition fees due the receiver's counsel are not a bar to the receiver's continued retention of the firm. Code § 543(c) provides that the receiver is to pay, subject to the bankruptcy court's approval, the prepetition debts incurred during the receivership as soon as practicable after a bankruptcy case is filed. Thus, payment of the fees of the receiver's counsel is assured and does not depend on whether or not a plan of reorganization will be confirmed.

## STATEMENT OF FACTS

The Debtor filed a Chapter 11 petition on October 25, 1996.[3] The Debtor's petition stated that its total assets were $12,005,-671.85 and its total liabilities were $43,302,-288.82 at book value, except land stated at cost, as of September 30, 1996. The business of the Debtor is the ownership of a multi-story building containing retail and office space located at 400 Madison Avenue, New York, New York (the "Property"). According to its petition the Debtor acquired the Property in 1982 pursuant to a series of transactions that included the raising by Prudential–Bache Securities, Inc. of $12 million from 99 investors throughout the United States. Investment units ranged in size from $82,500 to $330,000.

In November 1993, Heller Financial, Inc., the then holder of the mortgage on the Property,[4] commenced a foreclosure action in the Supreme Court of the State of New York, New York County (the "Supreme Court"). The amount of the mortgage is approximately $39 million. The Debtor contested the foreclosure action and asserted counterclaims for breach of the duty of good faith and fair dealing, breach of contract and negligent misrepresentation. By order entered on July 27, 1995, the Supreme Court granted the secured creditor's motion for summary judgment to permit foreclosure and dis-

---

3. The facts which follow are drawn from the Debtor's case file in addition to the various retention papers. Obviously the facts are found only for the purpose of placing the present ruling in context and should not be used for any other purpose.

4. Madison 47–48 Equities LLC (the "Secured Creditor") has succeeded to the interests of Heller.

missed the Debtor's counterclaims. The Debtor appealed the decision and it was expected that the appeal would be heard during the March 1997 term of the Appellate Division, First Department.

David Parker (the "Receiver") was appointed as the receiver for the Property by the Supreme Court on November 15, 1993 and was acting as receiver at the time the Debtor filed its Chapter 11 petition. This Court authorized Parker to remain as Receiver pursuant to a Stipulation (the "Stipulation") among the Secured Creditor, the Debtor and the Receiver.[5] The primary purpose of the Stipulation was to excuse compliance by the Receiver with Code § 543(a) which requires turnover of property held by a custodian,[6] unless turnover is excused by the bankruptcy court pursuant to Code § 543(d)(1). In its Chapter 11 petition, the Debtor had stated that it did not anticipate seeking a turnover of the Property from the Receiver.[7]

The Stipulation recited the parties' agreement that the Receiver continue and act in accordance with the terms of the orders of the State Court, except as otherwise expressly set forth in the Stipulation. Paragraph 1 of the Stipulation provided that the Receiver could pay the expenses and impositions of the Property incurred subsequent to the filing of the Chapter 11 petition as permitted by the orders of the State Court. The Receiver was also given the right to pay the expenses and impositions of the Property incurred *prior* to the petition as set forth on an attached schedule, which listed expenses of $1,743,973.37, including real estate taxes of $1,262,459.53, subject to paying expenses other than real estate taxes first. Paragraph 1 excluded the Receiver's commissions and his counsel's compensation from the scope of the items to be paid at that time.

Paragraph 6 of the Stipulation contained provisions relative to the Receiver's commissions and the attorney's compensation. It provided as follows:

"The Receiver shall have no obligation to file interim applications under Section 330 of the Bankruptcy Code in order for the Receiver and those professionals acting on his behalf as previously approved in the State Court Orders to be paid and receive compensation for services rendered. The Receiver shall pay no fees to professionals acting on his behalf who have not been retained pursuant to Section 327 of the Bankruptcy Code. The Receiver shall pay no Receiver's commissions to himself or fees to professionals acting on his behalf until 10 days following his providing the U.S. Trustee with a statement of his intention to make such payment, together with the method of calculation or other documentation supporting such payment."

As provided for in Paragraph 6 of the Stipulation, the Receiver thereafter sought authority to continue his retention of the law firm of Kleinberg, Kaplan, Wolff & Cohen, P.C. (the "Attorneys"), a firm in which he is a partner. The Attorneys are the law firm that had been authorized by the Supreme Court to represent him in his capacity as Receiver. Attached to the December 18, 1996 application were copies of all of the Supreme Court's orders relating to the Receiver's authority, including the order of March 4, 1994 authorizing the Receiver's retention of the Attorneys.

The Attorneys were included by the Debtor on its petition in its required list of the 20 largest creditors. The U.S. Trustee has pointed to this listing as an admission by the Debtor that the Attorneys are creditors of the Debtor.[8]

---

**5.** See Case Document No. 10.

**6.** The term "custodian" is defined in Code § 101(11) and includes a receiver appointed in a non-bankruptcy case. It is undisputed that the Receiver is a custodian as that term is used in Code § 543.

**7.** See Paragraph 10 of the Affidavit Under Local Bankruptcy Rule 52 accompanying the Debtor's Chapter 11 petition (Case Document No. 1).

**8.** The Attorneys were never retained by the Debtor. It is far from clear that the Attorneys are unsecured creditors of the Debtor since they were retained by the Receiver and not the Debtor. The Attorneys do have a right to be paid by the Receiver out of the rents which are being collected by the Receiver. The Attorneys' claim to be paid out of the rents can be likened to the interest of a non-recourse secured creditor in a debtor's property.

The U.S. Trustee's Office apparently advised the Receiver orally that it objected to the December 18, 1996 application because that application omitted any reference to the prepetition fees owed the Attorneys. An amended application was thereafter submitted. In the amended application the Receiver disclosed that the Attorneys were owed $36,444.71 for fees and expenses incurred for services rendered to the Receiver from October 1 through 25, 1996. The amended application went on to state that it was anticipated that these fees would be paid to the Attorneys shortly as the Receiver was then preparing a stipulation for court approval to authorize the payment of these fees with the Secured Creditor's consent.

### SUMMARY OF PARTIES' LEGAL ARGUMENTS

The Office of the U.S. Trustee filed a written objection to the amended application. The basis of the objection was as follows:

"8. Pursuant to Bankruptcy Code § 327(a), a trustee may only employ attorneys that, among other things, do not hold interests adverse to the estate, and that are disinterested persons, as that term is defined by Bankruptcy Code § 327(a).

"9. Because a receiver who continues in possession is the functional equivalent of a trustee, a receiver must also obtain court approval prior to retaining an attorney. *In re 245 Assocs., LLC*, 188 B.R. 743, 750 (Bankr.S.D.N.Y.1995); *In re Uno Broadcasting Corp.*, 167 B.R. 189, 201 (Bankr. D.Ariz.1994); *In re Posadas Assocs.*, 127 B.R. 278, 280 (Bankr.D.N.M.1991). * * *

"10. The professionals retained by a receiver, therefore, must be disinterested. *In re LCL Income Properties, L.P. VI*, 177 B.R. 872, 875 (disinterestedness is required of the professionals hired by a custodian) * * *."

As for the Receiver, his amended application pointed out that the Receiver is not the Debtor. Further the Receiver noted that the

state court orders governing his actions would not have permitted him to pre-pay his attorneys. He stated that the Attorneys' October fees had not even been billed at the time the Debtor filed its petition.[9] Finally he stated that disqualifying the Attorneys from representing him would be truly anomalous since they were in the best position to do so due to their prior experience and any new law firm would have to incur countless hours to get up to speed.

### DISCUSSION

■ When interpreting the Bankruptcy Code, careful attention should be paid to the actual statutory language. See *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). See also *In re Palm Coast, Matanza Shores Limited Partnership*, 101 F.3d 253 (2nd Cir.1996) (Since Code § 327(d) on its face only permits a trustee to retain his own firm as attorneys or accountants and makes no reference to real estate consultants, a trustee may not employ his own real estate firm as real estate consultant). In this court's view, a facial reading of Code § 327(a)[10] refutes the U.S. Trustee's position.

Code § 327(a), on which the U.S. Trustee relies, provides as follows:

"Except as otherwise provided in this section, the *trustee*, with the court's approval, may employ one or more attorneys * * * that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the

---

**9.** It should be obvious that a receiver has no control over a debtor's choice whether or not to file a bankruptcy petition and that a debtor may choose not to give any prior notice to a receiver of its intention to file.

**10.** Code § 327(a) is found in Chapter 5 of the Code. Code § 103(a) provides for the application of Chapters 1, 3 and 5 in Chapter 11 cases.

trustee in carrying out the trustee's duties." (emphasis added)

There can be no dispute that the term "trustee" as used in the language just quoted includes a trustee appointed in a Chapter 11 case under Code § 1104.

It is also well settled that the *debtor in possession* in a Chapter 11 case is within the meaning of trustee as used in Code § 327(a) when no trustee has been appointed. Code § 1101(1) provides that " 'debtor in possession' means debtor except when a person that has qualified under section 322 [11] of this title is serving as trustee in the case". Thus, the Debtor in this case is a debtor-in-possession because no trustee has been appointed under Code § 1104 even though the Receiver remains in possession of the Property. Code § 1107(a) provides that the debtor-in-possession has "all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

Nowhere is there a provision in the Code stating that the term "trustee" is to be read in Code § 327(a) or elsewhere to include a receiver retained in possession under Code § 543(d).[12] Under the Bankruptcy Code, the bankruptcy court is expressly prohibited from appointing a receiver, *see* Code § 105(b),[13] although the bankruptcy court can continue a prepetition receiver's appointment under Code § 543(d)(1). Importantly nowhere in the Code is there even a hint that a "continued" receiver is subject to some or all of the duties imposed on a Chapter 11 trustee by Code § 1106. For example, Code § 1106 imposes on a Chapter 11 Trustee the duty to investigate the debtor (Code § 1106(a)(3)), the duty to file a report of any investigation (Code § 1106(a)(4)), and the obligation to file a plan of reorganization or recommend conversion or dismissal of the case (Code § 1106(a)(5)).

The duties of a receiver retained in possession under Code § 543(d) are limited to the preservation and care of the property under his control.[14] Since no section of the Code includes a receiver who remains in possession within the definition of trustee, the receiver does not take on the obligations and duties of a Chapter 11 trustee nor the somewhat different ones of a debtor-in-possession set forth in Code § 1107. Simply put the receiver has absolutely no responsibility to ensure the progress of the case by filing a plan of reorganization or negotiating with

---

**11.** Code § 322 does not apply to the Receiver. It applies only to persons selected as trustee under Code §§ 701, 702, 703, 1104, 1163, 1202, or 1302.

**12.** *In re LCL Income Properties, L.P.VI,* 177 B.R. 872 (Bankr.S.D.Ohio 1995) relied on by the U.S. Trustee does not support its position. The court held that there is *no* statutory requirement of disinterestedness as to a *custodian* retained under Code § 543(d). No similar issue as to the custodian's counsel was before that court.

**13.** In contrast, under the former Bankruptcy Act, § 2a(3), the bankruptcy court could, and frequently did, appoint receivers. Under the former Bankruptcy Act and Rules, a receiver appointed by the bankruptcy court was required to be disinterested. *See* former Bankruptcy Rules 201(f) and 209(d). Under the former Bankruptcy Act, the Bankruptcy Rules required the receiver and the receiver's counsel to meet the same standards of eligibility as were applicable to a trustee and trustee's counsel. *See* former Bankruptcy Rules 102(f) ("Only a person who is eligible to be a trustee under Rule 209(d) may be appointed a receiver,"); Rule 209(d) ("A trustee shall have no interest adverse to the estate and shall be competent to perform the duties of his office,") and Rule 215(a) ("If the attorney [whose retention is sought by the trustee or receiver] * * * represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the Court may authorize his employment").

**14.** Black's Law Dictionary (6th ed.1990) defines a receiver as

"A person appointed by a court for the purpose of preserving property of a debtor pending an action against him, or applying the property in satisfaction of a creditor's claim, whenever there is danger that, in the absence of such appointment, the property will be lost, removed or injured. An indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation, and receive its rents, issues and profits, and apply or dispose of them at the direction of the court when it does not seem reasonable that either party should hold them."

creditors or to perform any other duties which are the prerogative and burden of a debtor-in-possession and a trustee.

The purpose of Code § 543 was succinctly stated in the House and Senate Reports on the Bankruptcy Reform Act of 1978 as follows:

"This section requires a custodian appointed before the bankruptcy case to deliver to the trustee and to account for property that has come into his possession, custody, or control as a custodian. 'Property of the debtor' in section (a) includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian. The section requires the court to protect any obligations incurred by the custodian, provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by the custodian, and to surcharge the custodian for any improper or excessive disbursement, unless it has been approved by a court of competent jurisdiction. Subsection (d) reinforces the general abstention policy in section 306 [15] by permitting the Bankruptcy Court to authorize the custodianship to proceed notwithstanding this section." S.Rep.No. 95–989, 95th Cong. 2nd Sess. at 85, 1978 U.S.Code Cong. Ad.News at pp. 5787, 7871; H.Rep.No. 95–595, 95th Cong. 2nd Sess. at 370, 1978 U.S.Code Cong. Ad.News at pp. 5785, 6326.

The legislative history just quoted states that Code § 543(d), which permits the court to allow the custodian to remain in possession, is in the nature of abstention. Code § 305(a)(1), which is also referred to, allows the Bankruptcy Court to suspend or dismiss *all* proceedings in a case if the interests of the creditors and the debtor would be better served by suspension or dismissal. In contrast, Code § 543(d)(1) lets the court suspend the provisions of the Code that contemplate a Chapter 11 debtor in possession will manage and operate so much of its property as is in the hands of a receiver at the filing date. *See* Code §§ 1107 and 1108. The premise that leaving the receiver in place is a form of abstention is consistent with the Code's express prohibition on the appointment of receivers by the bankruptcy court, Code § 105(b).

■ The receiver left in possession by the bankruptcy court has no role in the bankruptcy case other than to manage and preserve the property in his charge in accordance with the orders governing his appointment. A receiver could be left in possession even if a Chapter 11 trustee were appointed. It is possible to conceive of fact patterns in which there are two or more prepetition receivers which had been appointed for different properties. Under those circumstances, the bankruptcy court could, after notice and hearing, determine that it was in the best interests of creditors to leave one receiver in possession but not another based on the evidence of value, the nature of the claims against each property, and any other relevant evidence.

That a receiver remains in possession after a Chapter 11 filing in a single asset real estate case is generally an indication that (a) the debtor does not have a high probability of success in confirming a Chapter 11 plan and/or (b) no reason exists to disrupt management of the property by the receiver in favor of management by the debtor in possession.[16] For example, in this case, the

---

**15.** As enacted the section referred to became Code § 305.

**16.** As a matter of practice, in single asset real estate cases before this judge, the receiver is generally left in possession when the receivership is well-established. If a receiver has only recently been appointed and not yet fully taken over management, the debtor is likely to end up managing the property as debtor in possession. However, where the debtor goes into possession, it will almost always provoke a dispute with the secured creditor over the debtor's right to use the rents to manage the property. *See* this court's decision in *In re Princeton Square Associates, L.P.* 201 B.R. 90 (Bankr.S.D.N.Y.1996). There normally is a stipulation between the debtor-in-possession and the secured creditor detailing management issues such as required leasing approvals, advertising, selection of the managing agent and the fee to be paid to the managing agent.

In refusing to remove the custodian on the debtor's challenge, the court in *In re LCL Income Properties, L.P. VI, supra,* wrote

"[I]n the event that reorganization does not occur, it would appear that the second mort-

Debtor is involved in an appeal of an adverse ruling made by the state court in the foreclosure action, the outcome of which is likely to be determinative of the success of this case.

This court finds none of the three cases relied on by the U.S. Trustee to be persuasive. *See In re Uno Broadcasting Corp.* ("*Uno*"), 167 B.R. 189 (Bankr.D.Ariz.1994); *In re Posadas Associates,* ("*Posadas*"), 127 B.R. 278 (Bankr.D.N.M.1991); and *In re 245 Associates, LLC* ("*245 Associates*"), *supra.* None of the cases consider the pre-Code predecessors to Code § 543.

In *Uno* the debtor filed a Chapter 11 petition only after its major creditor obtained a large judgment against it and a receiver had been appointed. The purpose of the receivership was to liquidate the debtor's assets to satisfy the judgment. The debtor's assets consisted principally of four pairs of radio stations involving eight licenses. The lender alleged the debtor acted in bad faith in filing the Chapter 11 petition and also pointed to the guilty plea on which the debtor's principal was awaiting sentencing.

The bankruptcy court correctly observed that the receiver had been appointed solely to protect the interests of the judgment creditor. 167 B.R. at 201. However, the bankruptcy court found the debtor offered no serious alternative to the turnover motion. The sole shareholder of the debtor, who was the person previously in charge of the debtor's operations, was unable to manage the business as he was in prison. His wife to whom he had given a power of attorney had no experience in the broadcast industry and no substantial general business experience. She did propose to engage a management consultant whose duties were not well-defined. The bankruptcy court determined that the receiver should stay in place with the powers and duties enumerated in the district court order of appointment subject to modification by order of the bankruptcy court.

This court disagrees with the concluding section of the *Uno* decision in which the bankruptcy court undertook a role clarification with respect to the receiver's duties. The bankruptcy court found that the receiver, having been excused from turnover, was the functional equivalent of a trustee and "must now have obligations and responsibilities to all creditors of the estate and, assuming solvency, to the equity security holders of the estate." 167 B.R. at 201. After declining to consider the debtor as a debtor in possession because the receiver was in possession, the bankruptcy court suggested that one option was to treat the receiver as an examiner with expanded powers.[17] In this court's view, the better issues to consider would have been the actual capability of the receiver to effect a sale of the stations, the probable proceeds of sale and the likelihood that any lien the judgment creditor had on the assets was voidable.[18] The *Uno* court's decision to require the receiver to comply with Code § 327(a) simply follows from its decision to treat the receiver as a trustee with another name.

gagee would be in a position to proceed with its foreclosure. Were that to happen, doubtless it would reinstall the present receiver. The dislocation in management caused by two changes in management organization would obviously result in unnecessary trouble and expenses. By leaving matters in the status quo as it has existed for more than two years, debtor will have the opportunity to reorganize contemplated by the bankruptcy laws, and at the same time the interests of creditors will be protected." 177 B.R. at 876.

17. As discussed, *supra*, this Court finds no inherent conflict between the concepts of excusing turnover under Code § 543(d) and having a debtor in possession. Accord, *In re LCL Income Properties, L.P. VI, supra.* Moreover, this court sees no need to create offices not explicitly provided for in the Code in the absence of highly unusual circumstances. A Chapter 11 trustee would plainly have had all the rights, powers and powers needed in the *Uno* case and there would be no debtor in possession. Moreover, expanding a receiver's duties to be almost equivalent to those of a trustee fails to respect the prohibition in Code § 105(a) on the appointment of receiver by the bankruptcy court.

18. An analysis of the facts in *Uno Broadcasting* indicates yet another problem in retaining the receiver. Could the receiver prosecute an appeal of the creditor's judgment for the benefit of the estate or file avoidance actions? If a creditors' committee were appointed, it could be authorized to prosecute the appeal and any available avoidance actions. *See In re STN Enterprises,* 779 F.2d 901 (2d Cir.1985).

The other two cases relied on by the U.S. Trustee also conclude that receiver's counsel needs to apply for retention under Code § 327(a). In neither case was the custodian actually left in possession beyond the initial weeks of the case. In *In re Posadas Associates, supra,* the Bankruptcy Court was principally concerned with the fees sought by the custodian in resisting turnover. It held that "where the custodian incurs costs not for complying with the turnover provisions of the Code but for resisting turnover, the Court finds that prior court approval is necessary in order for the fees and costs to be considered for administrative expense priority." 127 B.R. 282.

■ *In re 245 Associates, LLC, supra,* cites both *Uno Broadcasting* and *Posadas Associates* with approval. While I respectfully disagree with my colleague's application of Code § 327(a) to receiver's counsel, I do not disagree with his result, disallowance of fees for opposing turnover. I simply decline to follow the analysis in *Posadas Associates* and *245 Associates, LLC* which relies on parsing Code § 503(b)(3) and (b)(4) and Code § 543(d)(1) to find a distinction between winding up duties by a receiver and his counsel for which they require no retention order, *see In re 245 Associates LLC,* 188 B.R. at 748, and those duties required by a continuing receiver and his counsel, *id* at 749, for which they do. I prefer a more broadly focused analysis of the function and place of a receiver in the bankruptcy scheme established by the Code, with due consideration given to the prior history under the former Bankruptcy Act. This Court finds its power to supervise the fees of the receiver's counsel in Code § 543 itself and in Code § 541.[19] Code § 541 creates an estate of the debtor's property which is deemed to be *in custodia legis* under the exclusive supervisory power of the Bankruptcy Court unless and until the automatic stay is lifted. See also Code § 541(a)(3).

It was well settled under the former Bankruptcy Act that receivers required to turn-over property could not be compensated for opposing turnover.[20] "Receivers have never been regarded as adverse claimants, as they hold only for the court which appoints them and have no personal interest in the property." 4 Remington on Bankruptcy (1957) § 1784 at 579. Compare *In re Rimsat, Ltd.,* 193 B.R. 499 (Bankr.N.D.Ind.1996) (Receiver not a party in interest under Code § 1109). Since the Code so plainly directs turnover by the custodian, it must be presumed that Congress intended that no compensation would be available for opposing that statutory duty.

That it was the bankruptcy court, and not the state court which had appointed the receiver, that was to supervise the receiver and fix the fees was firmly established under the former Bankruptcy Act by the decision of the United States Supreme Court in *Gross v. Irving Trust Co.,* 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243 (1933). In *Gross* the Supreme Court held

"The jurisdiction of the Bankruptcy Court being paramount, the power of the state court to fix the compensation of its receivers and the fees of their counsel necessarily came to an end with the supervening bankruptcy. *When the Bankruptcy Court acquired jurisdiction, the sole power to fix such compensation and fees passed to that court."* 289 U.S. at 345, 53 S.Ct. at 607 (emphasis added).

**19.** Code § 105(a) which authorizes the court to issue any order, process, or judgment that is necessary to carry out the provisions of the Code, also grants the court adequate authority to do what is necessary to make the Code work.

**20.** The former Bankruptcy Act contained provisions similar to those now found in Code § 543 with respect to receivers appointed by other courts. Section 2(a)(21) of the Act permitted the bankruptcy court to require receivers to deliver property in their possession to a trustee or receiver appointed under the Act, unless the appointment had been made more than four months earlier. In Chapter X, the trustee or debtor in possession was expressly vested with the rights, if any, of the prior receiver and with the right to immediate possession. See former Act § 257. The court was required to make such provisions as were equitable for the protection of the obligations incurred by the receiver in the prior proceeding and for the payment of the reasonable costs and expenses incurred therein. See former Act § 258. Similar provisions applied in Chapter XII cases. See former Act § 506–8.

If the receiver has counsel at the time the bankruptcy case is filed, there should already have been an order entered authorizing the receiver to obtain counsel and approving the specific selection of counsel.[21] Post-bankruptcy the receiver remains subject to the terms of the prepetition orders of appointment which describe his duties and powers, including the right, if any, to retain counsel and accountants once bankruptcy intervenes. The bankruptcy court has the supervisory power over a receiver and supersedes the authority of the state or federal court which appointed the receiver. The Bankruptcy Court may issue such additional orders or amendments of prior orders as it deems appropriate to govern the receiver's management of estate property. Regular reports of the operations of the property under the receiver's supervision can be directed so that all parties remain informed. Should those reports not be satisfactory or raise questions any party in interest may seek to have the bankruptcy court direct the receiver to appear and respond to the inquiries.

When turnover occurs, the Bankruptcy Court is required to protect the persons to whom the custodian is indebted. *See* Code § 543(c)(1)[22] It cannot be disputed therefore that, if the Receiver had turned the Property over to the Debtor, the Court would be required to provide for the payment of all of the Receiver's unpaid bills, including those of his counsel, subject only to a determination of reasonableness.

This Court fails to see as a policy matter why there should be any different treatment of those expenses when the custodian is re-

tained than when he is not. The U.S. Trustee points to the initial phrase of Code § 543(d)(1) which allows the Bankruptcy Court to excuse compliance with subsection (c) when turnover is not required. Since it is subsection (c) which provides for the allowance and payment of the custodian's prepetition expenses, the U.S. Trustee reasons that application of subsection (c) is not mandatory and it is not intended that the custodian's pre-petition expenses be paid when the custodian is retained. Accord *In re Posadas Associates, supra,* and *In re 245 Associates, LLC, supra.* The Court finds this hypertechnical reading at odds with the plain meaning of Code § 543. In this Court's view, if the inclusion of (c) is not a drafting error, its inclusion should be viewed as simply preserving the flexibility of the bankruptcy court to deal with any circumstances that might arise. For example, the bankruptcy court might not wish to direct immediate payment if the receivership appears to be insolvent or cash poor.

It makes absolutely no sense to put the prepetition obligations of a receiver on a worse footing if a receiver is excused from turnover than if he is not. If it were otherwise, the receiver and the receivership creditors would be placed in the position of having an interest in whether or not turnover occurred, something which they should manifestly not have, and a position that has been rejected since long before the adoption of the Bankruptcy Code. The rights of the secured creditor who opposes turnover to the debtor would not be protected if the receiver, or the

21. If a motion is made to excuse compliance with the turnover requirement, that is the time for the Bankruptcy Court to examine whether the receiver and/or his then attorneys have such connections that their continuation would be inappropriate. Certainly, the interests of *all* creditors may not well served by a custodian or the custodian's counsel who cannot meet the requirements of disinterestedness, other than unpaid fees, that the Code places on trustees and their counsel. Under the former Bankruptcy Act it does not appear that there was a distinction drawn between receivers appointed by the bankruptcy court and those appointed by other courts and left in after the bankruptcy case was commenced. See Footnote 13, *supra.*

22. Code § 543(c) provides that once the turnover has occurred the court, after notice and a hearing, shall
"(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents or profits of such property;
(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and
(3) surcharge such custodian * * * for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title."

receivership creditors, opposed the secured creditor's position in order to protect their own. And, after all, it is the secured creditor and not the receiver who should make application to have the receiver excused from the turnover objection imposed by Code § 543(a).[23]

Since the Bankruptcy Court can excuse compliance with the turnover requirement of Code § 543(a) only after notice and hearing, any issues concerning the propriety of the receiver's prior conduct, including his choice of counsel, can be considered at the time of any hearing. It would no doubt be desirable to request that a receiver place in the record of the bankruptcy case the information about his attorneys that would be found in the usual retention application.

The so-ordered Stipulation in this case provided that the Receiver would make application to this Court for the retention of the Attorneys. He has done so and nothing indicates to this Court that the Attorneys' retention should not be continued. The fact that the receiver is a member of the firm is not an obstacle. The state court obviously found no problem with this relationship. This court looks to the Code's provisions with respect to trustees for guidance and finds trustees are permitted to retain their own law firms. See Code § 327(d). Compare *In re Ira Haupt & Co. (Knapp v. Seligson)*, 361 F.2d 164, 168 (2nd Cir.1966).

The attorneys' prepetition claim will be paid under Code § 543(c) as soon as possible along with the other prepetition debts of the receivership. This is a straightforward issue that need not be dealt with in the future in a convoluted way. The status of the fees due a receiver's attorneys is in stark contrast to the prepetition claim of the debtor's prepetition attorneys. That claim can only be paid pursuant to the terms of a confirmed Chapter 11 plan or a Chapter 7 trustee's distribution and may not be paid in full, even if the debtor is successful in confirming a plan.

In summary this court agrees that a receiver would be required to make application to the Bankruptcy Court for the retention of an attorney if no prior court order permitting retention existed. As this court earlier indicated, it does not agree that a new retention application is required when bankruptcy intervenes if there is already a retention order in place in the receivership. Certainly some scrutiny should be given to the receiver and his counsel if turnover is not directed and that can be done in connection with the request to the court to excuse compliance with the turnover requirement of Code § 543(a). For the reasons set forth earlier, this court most emphatically does not agree that a receiver's attorneys are disqualified from retention because they are owed fees for prepetition services. In all but the smallest cases in which few legal services are required, it is impossible to imagine that the receiver's attorneys will not have an outstanding bill. This court declines to adopt a standard that would have the effect of disqualifying a receiver's prepetition counsel from continuing in virtually every case.[24]

---

23. A debtor may be best able to garner the secured creditor's consent to a plan by agreeing not to disturb a long-standing prepetition receivership, as the Debtor did in this case. Most Chapter 11 cases with real estate in foreclosure involve only a single property, one or a few mortgagees, a few small unsecured creditors and the debtor. The unsecured creditors will be wiped out unless the debtor is able to negotiate a plan with the secured creditor. In light of the Second Circuit's decision in *In re Boston Post Road Ltd.*, 21 F.3d 477 (1994), it is virtually impossible in this Circuit for a debtor to confirm a plan without the secured creditor's consent.

24. Apparently recognizing the problem their objection poses, the U.S. Trustee originally proposed that the Receiver retain the Attorneys as special counsel because special counsel need not be disinterested. *See* Code § 327(e) ("The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed"). This court finds that approval no more appropri-

ate since Code § 327(b) is equally inapplicable to the receiver.