NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

FIRST SOUTHERN NATIONAL BANK, *Plaintiff/Appellee*,

*v.*

SUNNYSLOPE HOUSING LIMITED PARTNERSHIP, *Defendant/Appellee*.

---

PAUL MASHNI, as court appointed receiver, *Receiver/Appellant*.

No. 1 CA-CV 15-0562
FILED 12-13-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2010-028618
The Honorable Douglas Gerlach, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Lewis Roca Rothgerber LLP, Phoenix
By Susan M. Freeman, Justin J. Henderson
*Counsel for Defendant/Appellee*

Quarles & Brady LLP, Phoenix
By John M. O'Neal, Brian Sirower, Jason D. Curry
*Counsel for Receiver/Appellant*

## MEMORANDUM DECISION

Justice Rebecca White Berch[1] delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

**B E R C H**, Justice:

**¶1**            Appellant Paul Mashni served as a court-appointed receiver for an apartment complex owned by Sunnyslope Housing Limited Partnership ("Sunnyslope").  After several years of litigation, Mashni applied to recover fees he and his counsel incurred in both superior court and bankruptcy court after Sunnyslope filed for Chapter 11 relief.  The bankruptcy court deferred to the superior court to rule on Mashni's application.  The superior court held that Mashni's application was moot because all former receivership estate assets were in the bankruptcy court's control, leaving no fund from which to pay the claimed fees.  For the reasons set forth below, we find that Mashni's application was not moot and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**            Several years ago, Sunnyslope developed an apartment complex in Phoenix.  It financed construction with a senior private loan guaranteed by the federal government and secured by a deed of trust on the apartment complex, as well as two junior loans from the Arizona Department of Housing and the City of Phoenix.  Sunnyslope intended to operate the complex consistent with the Low Income Housing Tax Credit ("LIHTC") program.

**¶3**            After Sunnyslope defaulted on the senior loan in 2009, Housing and Urban Development took over the loan, and sold it to First Southern National Bank ("FSNB") in 2010.  FSNB sued Sunnyslope shortly thereafter and sought the appointment of a receiver to manage the complex.  The superior court appointed Mashni to serve as receiver for the complex.

---

[1]      The Honorable Rebecca White Berch, Retired Justice of the Arizona Supreme Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

The order appointing Mashni (the "Appointing Order") gave him broad powers, authorizing him, among other things, to

- "hire, employ, and retain attorneys . . . which the Receiver deems necessary to assist it in the discharge of its duties,"

- "pay and discharge out of the funds coming into its hands all the expenses of the receivership," and

- "prepare periodic statements reflecting the Receiver's fees" and, upon court approval, "pay [the fees] from receivership estate funds, if any."

The Appointing Order also directed Mashni to submit claims for fees and administrative expenses "to the Court for approval and confirmation."

¶4        Once Mashni took control of the complex, he began leasing units at market rates which, according to Sunnyslope, jeopardized the LIHTC tax credits. Mashni settled an insurance claim relating to hail damage at the complex and paid past-due property taxes. He also negotiated a potential sale of the complex that Sunnyslope blocked by filing for Chapter 11 bankruptcy.

¶5        The bankruptcy court ordered Mashni to turn over control of the complex to a new manager. Following the turnover, Mashni moved for relief from the automatic stay so that he could wind up the receivership. The bankruptcy court authorized him to

> take any and all steps in the Superior Court (or otherwise) to wind up the affairs of the receivership and terminate the receivership, including (without limitation) seeking and obtaining from the Superior Court: (i) a full discharge of the Receiver, all of his duties and responsibilities as Receiver, and all liability with respect to the Receivership Action; (ii) final allowance and approval of the Receiver's final accounting; (iii) exoneration of the Receiver's bond; (iv) such other determinations as may be necessary to wind up the receivership, including, without limitation, findings of fact confirming whether the Receiver acted at all times during the Receivership Action in accordance with, and within the scope of, the Receivership Order.

Pursuant to the bankruptcy court's order, Mashni filed his "Final Report" in superior court seeking to have his bond exonerated and approval of approximately $90,000 in attorneys' fees. At that time, Mashni still held approximately $663,000 obtained in the hail damage claim settlement. Sunnyslope opposed the Final Report, vaguely arguing that Mashni's fee claim was "excessive and unreasonable." Sunnyslope also filed a third-party complaint against Mashni relating to his work as receiver, which the superior court dismissed.

¶6         The bankruptcy court approved Sunnyslope's Chapter 11 reorganization plan in March 2012. The plan obligated Mashni to turn the hail damage claim proceeds over to the bankruptcy estate, which he did. Approximately a year later, Mashni reapplied to the superior court for payment of his and his counsels' fees. He also applied to recover the same fees in bankruptcy court. Sunnyslope again opposed Mashni's superior court application, this time arguing that (1) only the bankruptcy court could award fees and (2) any ruling by the superior court would be an improper advisory opinion "unless . . . the Bankruptcy Court specifically determines that this Court should proceed as [Mashni] has requested." Sunnyslope also opposed Mashni's bankruptcy court application, arguing there that his claimed fees were excessive.

¶7         In August 2013, the superior court granted Sunnyslope leave to re-file its third-party complaint and denied Mashni's renewed fee application. Mashni unsuccessfully moved to dismiss the third-party complaint, then took a special action appeal to this court. While the special action was pending, the bankruptcy court declined to rule on Mashni's still-pending fee claim, stating that the claim "should first be determined in the state court." In April 2014, this court held that Mashni was immune from suit with respect to the claims stated in Sunnyslope's third-party complaint. *Mashni v. Foster ex rel. Maricopa Cty.*, 234 Ariz. 522, 528, ¶ 21, 323 P.3d 1173, 1179 (App. 2014) ("*Mashni I*").

¶8         This court's mandate in *Mashni I* issued in February 2015. Mashni then renewed his fee application in superior court, this time seeking nearly $400,000 in fees. Sunnyslope again opposed it, arguing in part that "there is no receivership estate from which the [superior] Court could grant . . . reimbursement" because "the only funds that remained in the receivership estate (the hail damage insurance proceeds) were turned over to the bankruptcy estate in early 2013." The superior court approved Mashni's Final Report and exonerated his bond, but declined to approve any fees, finding that the Appointing Order limited Mashni's compensation to "receivership estate funds" and the payment of attorneys' fees to "funds

4

coming into [Mashni's] hands" via the receivership. The superior court concluded that the receivership estate's lack of funds rendered Mashni's fee request moot. The superior court also determined that the bankruptcy court could potentially revise any ruling it made on the merits, making the bankruptcy court "the appropriate forum for resolving [Mashni's] requests."

¶9        Mashni timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes section 12-2101(A)(1) (2016).[2]

## DISCUSSION

### I.    Mashni's Fee Application Was Not Moot; The Appointing Order Did Not Limit Recovery to the Depleted Receivership Estate.

¶10        A case may become moot when court action would no longer have any effect on the parties. *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 504, 943 P.2d 855, 864 (App. 1997). We conclude that a ruling on the merits of Mashni's application still could affect his ability to recover. The application therefore was not moot.

¶11        Sunnyslope contends Mashni's application was moot because the receivership estate is depleted. Sunnyslope cites paragraphs (C)(17) and (C)(26) of the Appointing Order, which authorized Mashni to

- "pay and discharge ***out of the funds coming into its hands*** all the expenses of the receivership and the costs and expenses of operation and maintenance of the Property, including all taxes, governmental assessments and charges and the nature thereof lawfully imposed upon the Property," and

- "prepare periodic statements reflecting the Receiver's fees. Upon completion of the above periodic statements, and delivery of the statement to the parties' respective attorneys of record, the Receiver shall pay ***from receivership estate funds, if any***, the amount of each statement."

(Emphases added). *See In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997) ("Post-bankruptcy the receiver remains subject to

---

[2]        Unless otherwise indicated, statutes and rules cited refer to the current version.

the terms of the prepetition orders of appointment which describe his duties and powers, including the right, if any, to retain counsel and accountants once bankruptcy intervenes.").

**¶12**         Paragraph (C)(17) does not moot Mashni's application. Funds still could come into Mashni's hands, from FSNB or other sources, should the bankruptcy court authorize payment of some or all fees the superior court approves, even though the receivership estate ceases to exist. Nor does paragraph (C)(26) render the application moot; it merely indicates that, if receivership estate funds exist, they would be the first source of payment.  Neither provision precludes the superior court from setting the fees for work in state court, especially where, as here, a bankruptcy court has asked the superior court to rule on a fee claim as authorized by our civil rules.  *See* Ariz. R. Civ. P. 66(c)(3) (In terminating a receivership, the superior court "shall make such order as is just concerning its termination, including all necessary orders on the fees and costs of the receivership.").[3]

## II.     The Bankruptcy Court's Ability to Review a Superior Court Ruling Does Not Render the Ruling Moot.

**¶13**         Sunnyslope also argues that Mashni's application is moot because the bankruptcy court could review the merits of any superior court ruling.  *See, e.g.*, *In re Yellow Cab Co-op Ass'n*, 185 B.R. 844, 848–51 (Bankr. D. Colo. 1995) (Rejecting state court approval of receiver fees where state court used "what can only be described as an extraordinary and questionable

---

[3]         Sunnyslope presented no Arizona authority limiting a receiver's recovery of fees to receivership estate assets.  Other authorities suggest that no such limitation exists.  *See, e.g.*, *City of Chula Vista v. Gutierrez*, 207 Cal. App. 4th 681, 685–86, 143 Cal. Rptr. 3d 689, 691–92 (2012) ("Generally, the costs of a receivership are paid from the property in the receivership estate. However, courts may also impose the receiver costs on a party who sought the appointment . . . or apportion them among the parties, depending upon circumstances.") (internal citations omitted); *Brackett v. Sedlacek*, 116 Ill. App. 3d 978, 980–81, 452 N.E.2d 837, 840 (1983) ("Where [receivership estate] income is insufficient to pay the receiver and his attorney, an appropriate share of these expenses will be borne by a lienholder who consents to the appointment of the receiver."); 75 C.J.S. Receivers § 464 (2016) ("When seeking payment, a receiver must look first to the property itself; if there are insufficient funds, then the receiver may petition the court to order the party who sought the appointment of the receiver to compensate the receiver for his or her costs and fees.").

procedure for approval of . . . fees."); *In re Sundance Corp.*, 149 B.R. 641, 650 (Bankr. E.D. Wash. 1993) ("Congress gave the bankruptcy courts power to decide all issues concerning charges against" property transferred from a receivership estate to the bankruptcy estate.). Sunnyslope's argument might have had some force had it presented any evidence suggesting that the bankruptcy court would disregard the superior court's ruling in determining what fees, if any, Mashni could recover from the bankruptcy estate.[4] But no such evidence was presented and we find it unlikely that the bankruptcy court would have sought a superior court ruling that it intended to ignore.

**¶14**     We therefore conclude that neither the Appointing Order nor the bankruptcy court's ability to review a superior court ruling foreclosed all possible avenues of recovery. Mashni's application was not moot.[5]

### III.     This Case Does Not Raise "Advisory Opinion" Concerns.

**¶15**     Sunnyslope maintains that any superior court ruling on the merits would be an improper advisory opinion. An advisory opinion is one that anticipates "troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." *W. Valley View, Inc. v. Maricopa Cty. Sheriff's Office*, 216 Ariz. 225, 228 n.6, ¶ 10, 165 P.3d 203, 206 n.6 (App. 2007) (quoting *Velasco v. Mallory*, 5 Ariz. App. 406, 410–11, 427 P.2d 540, 544–45 (1967)).

**¶16**     Mashni did not ask the superior court to anticipate future events that may not occur; he asked the superior court to determine appropriate compensation for his and his counsels' past efforts in

---

[4]     This argument also ignores the possibility, which we do not address, that Mashni could recover fees from non-bankrupt sources such as First Southern. *See Gutierrez*, 207 Cal. App. 4th at 685–86, 143 Cal. Rptr. 3d at 691–92; *Brackett*, 116 Ill. App. 3d at 980–81, 452 N.E.2d at 840.

[5]     The parties dispute the appropriate standard of review for a finding of mootness. We need not decide which standard applies because we find the superior court erred as a matter of law. We thus would have reached the same result under either abuse of discretion or *de novo* review. *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003) ("[W]hen a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion." (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982)).

connection with his state-court-ordered appointment as a receiver. Our rules require courts to issue appropriate orders to conclude receiverships, including fee orders. Ariz. R. Civ. P. 66(c)(3) (In terminating a receivership, the superior court "*shall* make such order as is just concerning its termination, including all necessary orders on the fees and costs of the receivership." (emphasis added)). The bankruptcy court simply determined that the attorneys' fees claim "should first be determined in the state court," likely because the superior court had the opportunity to view the receiver's work, and it lifted the stay so that Mashni could "take any and all steps in the Superior Court (or otherwise) to wind up the affairs of the receivership and terminate the receivership." And the superior court was uniquely qualified to determine the reasonableness of the fee claim, having appointed the receiver and having presided over proceedings involving the receiver. Thus, in these circumstances the superior court was not only authorized but required to rule on Mashni's fee application.

¶17　　　Citing *Taylor v. Sternberg*, 293 U.S. 470, 55 S. Ct. 260 (1935), Sunnyslope suggests that the superior court lacked the power to rule on the fees claim. There, the Supreme Court found that, "with the filing of the petition in bankruptcy, the power of the state court in that respect ceased; and its order fixing the compensation of the receiver and his counsel was a nullity because made without jurisdiction, such jurisdiction then having passed to the bankruptcy court." *Id.* at 472–73, 261–62. *Taylor* is distinguishable because the bankruptcy court in this case left Mashni's claim pending so that the superior court could determine an appropriate award. Sunnyslope even acknowledged at one point that the superior court could consider the merits of Mashni's application if "the Bankruptcy Court specifically determines that [the superior] Court should proceed as [Mashni] has requested," which it clearly did. For these reasons, a ruling on Mashni's application would not be an improper advisory opinion. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548, 694 P.2d 835, 836 (App. 1985) (An opinion is advisory only if it "declare[s] principles of law which cannot have any practical effect in settling the rights of litigants.").

## IV.　Attorneys' Fees on Appeal.

¶18　　　Mashni requests his attorneys' fees incurred on appeal under Paragraph (C)(27) of the Appointing Order. That paragraph describes how Mashni can obtain superior court approval for fees; it does not authorize a fee award on appeal. *Cf. Mashni I*, 234 Ariz. at 528, ¶ 22, 323 P.3d at 1179 (declining to award fees under the Appointing Order). We therefore

decline to award fees. We award Mashni his costs incurred on appeal contingent upon his compliance with ARCAP 21.

## CONCLUSION

¶19 We reverse and remand for further proceedings on Mashni's fee application. We express no opinion on the application's merits.



AMY M. WOOD • Clerk of the Court
FILED: AA