# Illinois Official Reports

## Appellate Court

---

**Deutsche Bank Trust Co. Americas v. Sigler**, 2020 IL App (1st) 191006

---

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee for the Trust Known as Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15, Plaintiff-Appellant, v. EYAL M. SIGLER; LEE SIGLER; JP MORGAN CHASE BANK, N.A., f/k/a Washington Mutual Bank; SUNSET FIELDS HOMEOWNERS ASSOCIATION OF NORTHBROOK, ILLINOIS; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (Eyal M. Sigler and Lee Sigler, Defendants-Appellees). |
| District & No. | First District, Fifth Division<br>No. 1-19-1006 |
| Filed | March 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-3305; the Hon. William Sullivan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | P. Russell Perdew and Ryan A. Sawyer, of Locke Lord LLP, of Chicago, for appellant.<br><br>Rod Radjenovich, of Jeffrey Strange and Associates, of Wilmette, for appellees. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Rochford and Delort concurred in the judgment and opinion.

## OPINION

¶ 1     The plaintiff, Deutsche Bank Trust Company Americas (Deutsche Bank), as trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15, appeals from an order of the circuit court that granted a motion by the defendants, Eyal Sigler and Lee Sigler (the Siglers), to dismiss Deutsche Bank's foreclosure action for violating section 13-217 of the Code of Civil Procedure (Code) (735 ILCS 5/13-217 (West 2012)), also known as the single-refiling rule. For the following reasons, we affirm.

¶ 2     The following facts and procedural history relevant to our disposition of this appeal were adduced from the pleadings and exhibits of record.

¶ 3     On August 30, 2006, Eyal Sigler executed a promissory note (note) in return for a loan of $681,000. The note was secured by a mortgage on the property located at 1801 Fieldwood Drive, Northbrook, Illinois, which both Eyal and Lee Sigler executed. The note was ultimately assigned to Deutsche Bank, as trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15.

¶ 4     The note required monthly, interest-only payments for the first 120 months, followed by monthly principal and interest payments until the loan matured on September 1, 2036. The note contained an acceleration provision that provided as follows:

> "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means."

The mortgage contained a similar acceleration provision.

¶ 5     The Siglers made monthly payments on the note for approximately 18 months. At that point, the Siglers failed to make the required monthly payments, beginning with the payment due on March 1, 2008, and defaulted on the note.

¶ 6     On May 2, 2008, Deutsche Bank mailed the Siglers a notice of default and acceleration (acceleration notice), stating that the Siglers had 30 days to cure the default with a payment of $15,339.59. The notice also stated that, if Siglers failed to cure the default, Deutsche Bank would "accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." The Siglers did not cure the default within 30 days of the May 2, 2008, notice and have not made a payment since February 1, 2008.

¶ 7     On June 13, 2008, a foreclosure action was filed against the Siglers (Sigler I) with the following entity named as the plaintiff: "Deutsche Bank Trust Company Americas as Trustee, Pooling #40438 Dist #2006QS51."[1] The complaint alleged that the Siglers "have not paid the

---

[1]In addition to the Siglers, the following parties were also named as defendants: JPMorgan Chase Bank, N.A., f/k/a Washington Mutual Bank, and Sunset Field Homeowners Association of Northbrook,

monthly installments of principal, taxes, interest and insurance for 03/01/2008, through the present." The complaint further alleged that "the principal balance due on the Note and Mortgage is $681,000.00, plus interest, costs, advances and fees."

¶ 8     On June 22, 2011, the Siglers' counsel sent Deutsche Bank a letter, stating that, after searching through the Security and Exchange Commission database, he could not find any proof that the trust named as the plaintiff actually existed. The Siglers' counsel demanded that Deutsche Bank dismiss the foreclosure complaint.

¶ 9     On October 13, 2011, Deutsche Bank, as trustee, filed a motion to correct misnomer, which stated that "the trust on whose behalf [Deutsche Bank] acts as Trustee was mistakenly not identified by its complete name, though it correctly identified the Trustee and correctly indicated that the case was brought by a trustee on behalf of a trust." The motion went on to request that the plaintiff be identified as "Deutsche Bank Trust Company Americas, as Trustee for the trust known as Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15."

¶ 10     The Siglers filed a response, arguing that the circuit court should deny the motion as a sanction for Deutsche Bank's "fraud on the court" by, *inter alia*, filing various "false affidavits" that identified the incorrect trust. The Siglers further argued that the circuit court should dismiss the action "[i]n order to deter Deutsche [Bank] from future false and outright dubious litigation filings."

¶ 11     On October 20, 2011, the circuit court denied the motion to correct misnomer. That same day, Deutsche Bank made an oral motion to voluntarily dismiss Sigler I, which the circuit court granted.

¶ 12     The next day, on October 21, 2011, a second foreclosure complaint was filed against the Siglers (Sigler II). The complaint listed the following party as the plaintiff: "Deutsche Trust Company Americas, as Trustee for the trust known as Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15."

¶ 13     The Sigler II complaint alleged that the Siglers defaulted on the note by failing to make the monthly payments "for March 1, 2008, through the present." The complaint also alleged that the Siglers owed $681,000.00 in unpaid principal, plus all interest and expenses. On December 5, 2011, Deutsche Bank voluntarily dismissed its complaint in Sigler II.

¶ 14     On February 8, 2012, Deutsche Bank, as trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15, filed a foreclosure complaint against the Siglers (Sigler III), alleging that the Siglers "have not paid the monthly installments of principal, taxes, interest and insurance for December 1, 2011, through the present." The complaint also alleged that "the principal balance due on the Note and the Mortgage is $681,000.00, plus interest, costs, advances and fees."

¶ 15     On March 16, 2012, the Siglers filed a motion to dismiss Sigler III pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)), arguing that the action should be dismissed for violating section 13-217 of the Code, also known as the "single-refiling rule,"

Illinois. Both were joined as defendants because their "interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff." Neither party has participated in this appeal.

which prohibits actions that have been voluntarily dismissed from being refiled more than once. The circuit court denied the Siglers' motion on April 13, 2012.

¶ 16    In an affidavit dated January 16, 2013, Peter Knapp, an agent of Deutsche Bank's "subservicer" GMAC Mortgage, LLC (GMAC), averred that, on December 16, 2011, prior to initiating foreclosure proceedings, GMAC mailed a grace-period notice to the Siglers as required by section 15-1502.5 of the Code (735 ILCS 5/15-1502.5 (West 2010)).[2]

¶ 17    Deutsche Bank and the Siglers subsequently filed cross-motions for summary judgment, with the Siglers once again invoking the single-refiling rule as a bar to Sigler III. On June 28, 2013, the circuit court entered summary judgment in favor of Deutsche Bank and against the Siglers.

¶ 18    On March 2, 2016, Deutsche Bank voluntarily dismissed Sigler III.

¶ 19    On March 9, 2016, Deutsche Bank filed the instant foreclosure action against the Siglers (Sigler IV), alleging that "[t]he mortgagor has failed to make payments when due and the subject loan has been accelerated." The complaint also alleged that "[t]he current unpaid principal balance is $681,000, plus accrued interest, court costs, title cost and plaintiff's attorney fees" and that "[t]he subject loan is paid through February 1, 2008."

¶ 20    On December 12, 2016, the Siglers filed a motion pursuant to section 2-619(a)(9) of the Code to dismiss Sigler IV, arguing that Sigler IV violated the single-refiling rule because it arose out of the same operative facts as the prior foreclosure actions that Deutsche Bank had voluntarily dismissed. On September 7, 2017, the circuit court denied the Siglers' motion without prejudice, finding as follows: Sigler I had a different plaintiff than the three subsequent foreclosure actions, Sigler III is different than Sigler II and Sigler IV in that Sigler III alleged a different default date, and Sigler IV is the first refiling of Sigler II. The Siglers filed a motion to reconsider the denial of their motion to dismiss, which the circuit court denied.

¶ 21    On May 10, 2018, the Siglers filed their answer and affirmative defense to the Sigler IV complaint, raising as an affirmative defense that Sigler IV was barred by the single-refiling rule. On May 31, 2018, Deutsche Bank filed a motion to strike the Siglers' affirmative defense, which the circuit granted on September 4, 2018.

¶ 22    On September 7, 2018, Deutsche Bank filed a motion for summary judgment. On October 3, 2018, the Siglers filed a motion for leave to file their amended answer and affirmative defenses, which the circuit court granted on October 18, 2018. In their amended answer, the Siglers asserted, as an affirmative defense, that Deutsche Bank's action on the underlying note was barred by the statute of limitations.

¶ 23    That same day, the circuit court also granted Deutsche Bank's motion to file an amended motion for summary judgment.

¶ 24    On November 8, 2018, Deutsche Bank filed its amended motion for summary judgment, attaching in support a second "notice of default" that it allegedly sent to the Siglers on August 18, 2015. The second notice of default stated that the Siglers owed $466,327.29 and had 30 days to cure the default or Deutsche Bank would accelerate the note and begin foreclosure proceedings. On December 6, 2018, the Siglers filed their response and a cross-motion for summary judgment. However, on January 3, 2019, before the circuit court could rule on the cross-motions for summary judgment, the Siglers filed a motion to reconsider both the circuit

---

[2]This statute has since been repealed by its own terms. See 735 ILCS 5/15-1502.5(k) (West 2010).

court's September 7, 2017, order denying their motion to dismiss Sigler IV and its September 4, 2018, order that struck their affirmative defense. The Siglers based their motion on the supreme court's decision in *First Midwest Bank v. Cobo*, 2018 IL 123038, which held that the appropriate test for determining if a complaint violates the single-refiling rule is the transactional test.

¶ 25 On March 21, 2019, after briefing had been completed on the Siglers' motion for reconsideration, the Siglers filed a notice to cite additional authority, attaching the decision in *Webster Bank, N.A. v. Pierce & Associates, P.C.*, No. 16 C 2522, 2019 WL 1227835 (N.D. Ill. Mar. 14, 2019). The circuit court entered an order granting the parties additional time to file briefs addressing the *Webster* decision.

¶ 26 On April 24, 2019, the circuit court granted the Siglers' motion to reconsider its September 7, 2017, order and dismissed Deutsche Bank's complaint in Sigler IV. In announcing its decision, the circuit court stated as follows:

> "I am ruling that Siglers 2, 3, and 4 all arise out of the same operative set of facts based on the *Webster* opinion, interpreting *Cobo*. And I am granting the [Siglers'] motion to reconsider my denial of the 2-619(a)(9) motion.
>
> I'm granting that motion. I'm filing [*sic*] that—finding that Sigler 4 is a second refiling of Sigler II.
>
> And I am dismissing [Deutsche Bank's] complaint with prejudice."

¶ 27 This appeal followed.

¶ 28 At the outset, we note that Deutsche Bank's brief fails to comply with Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018), which requires that the appellant include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal ***." Deutsche Bank's statement of facts is rife with argument and comment, such as the following: "Multiple key facts about Sigler III were different from facts in Sigler II. Most significantly, the nature of the default was different ***." Supreme court's rules "are not aspirational" and "are not suggestions," but rather, "[t]hey have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). However, it is within our discretion to consider an appellate brief, notwithstanding an appellant's failure to comply with Rule 341(h)(6). *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 228 (2008). We do not find it necessary to strike Deutsche Bank's statement of facts because the failure to comply with Rule 341(h)(6) does not hinder our review of the issue raised on appeal; rather, we will simply disregard any improper statements. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009).

¶ 29 Turning to the merits, Deutsche Bank raises the following two arguments on appeal in support of its claim that the circuit court erred in granting the Siglers' motion to reconsider and dismissing Sigler IV: (1) the supreme court's decision in *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252 (1991), should be overturned because its interpretation of section 13-217 of the Code, known as the single-refiling rule, is contrary to the statute's plain language and (2) even under the supreme court's interpretation, the court erred by dismissing its complaint because the instant action did not violate single-refiling provision of section 13-217.

¶ 30 Section 2-619(a)(9) of the Code allows involuntary dismissal of a claim that is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-

619(a)(9) (West 2012). "Affirmative matter" is "something in the nature of a defense that negates the cause of action completely." (Internal quotation marks omitted.) *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 10. We review a trial court's dismissal of an action under section 2-619(a)(9) *de novo*. *Id.*

¶ 31     The single-refiling rule derives from section 13-217 of Code, which states, in relevant part, that if

> "the action is voluntarily dismissed by the plaintiff, *** the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is voluntarily dismissed by the plaintiff ***." 735 ILCS 5/13-217 (West 2012).

In *Flesner*, 145 Ill. 2d at 254, the supreme court interpreted this statute to allow "one, and only one, refiling of a claim."

¶ 32     Deutsche Bank first argues that we should overturn *Flesner* because our supreme court's interpretation is not supported by the plain language of the statute. As Deutsche Bank acknowledges, we do not have the power to depart from the supreme court's interpretation of a statute or overrule its decision. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28 ("The appellate court lacks authority to overrule decisions of [the supreme court], which are binding on all lower courts." (Internal quotation marks omitted.)). We, therefore, decline Deutsche Bank's invitation to revisit *Flesner*.

¶ 33     Deutsche Bank's next argument is that, even under the supreme court's interpretation of the single-refiling rule, the circuit court erred when it determined that its complaint in the instant action was an impermissible second refiling.

¶ 34     "Whether two complaints state the same claim does not depend on how the plaintiff labels the complaint." *Cobo*, 2018 IL 123038, ¶ 18. Rather, to determine whether two lawsuits assert the same cause of action for purposes of the single-refiling rule, we apply the test for "identity of cause of action" applicable to claims of *res judicata*—the "transactional test." *Id.* This test treats separate claims as asserting the same cause of action "if they arise from a single group of operative facts." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Courts should approach this inquiry " 'pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id.* at 312 (quoting Restatement (Second) of Judgments § 24, at 196 (1982)).

¶ 35     Deutsche Bank argues that, applying this test, all four of its foreclosure complaints against the Siglers are based on a different set of operative facts. Therefore, the instant action is not a violation of the single-refiling rule. Deutsche Bank first contends that Sigler I is distinct from the three subsequently-filed foreclosure complaints because Sigler I was filed on behalf of a different (and ultimately nonexistent) trust and, therefore, Sigler I does not share an "identity of parties" with the other three complaints. Next, Deutsche Bank contends that Sigler II is distinct from Sigler III because they each alleged different payment default dates (March 1, 2008, as opposed to December 1, 2011) and Sigler III was based on facts that occurred after Sigler II was dismissed. Lastly, Deutsche Bank contends that Sigler IV is distinct from Sigler II and Sigler III for the following reasons: (1) Sigler IV alleged a different default date than Sigler III (March 1, 2008, as opposed to December 1, 2011) and (2) Sigler IV sought to recover a different amount than Sigler II because it sought interest and costs that accrued through the

March 6, 2016, filing date, whereas Sigler II sought interest and costs which accrued through the October 11, 2011, filing date.

¶ 36    The Siglers respond that each of the four foreclosure actions arise from the same operative facts because they were brought by the same trustee (Deutsche Bank), sought the same principal amount ($681,000.00), and alleged default of the same underlying note and mortgage. Additionally, the Siglers contend that they did not commit multiple defaults that could form the basis of different causes of action because, after their initial default and failure to cure the default, Deutsche Bank accelerated their note.

¶ 37    Turning first to Sigler I, Deutsche Bank argues that the circuit court correctly concluded that Sigler I was irrelevant for the purposes of the single-refiling rule because it did not share the same plaintiff as the subsequently filed foreclosure actions. The Siglers assert that, although the trust named in Sigler I was incorrect, all four actions were brought by Deutsche Bank in its capacity as trustee and, as a result, all four foreclosure actions were brought by the same plaintiff. We agree with Deutsche Bank.

¶ 38    The single-refiling rule applies only to multiple actions filed by the same plaintiff or a party in privity with the plaintiff. See *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 27 (*res judicata* requires "an identity of parties or their privies"); see also 735 ILCS 5/13-217 (West 2012). For purposes of litigation, "[a] written trust possesses a distinct legal existence that is recognized by statute [citation] and can sue or be sued through its trustee in a representative capacity on behalf of the trust." *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005).

¶ 39    The named plaintiff in Sigler I was Deutsche Bank "as trustee, Pooling #40438 Dist #2006QS51." Deutsche Bank filed a motion to correct misnomer, stating that "the trust on whose behalf [Deutsche Bank] acts as Trustee was mistakenly not identified by its complete name, though it correctly identified the Trustee and correctly indicated that the case was brought by a trustee on behalf of a trust." The named plaintiff in the subsequent foreclosure actions was Deutsche Bank "as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15." Although Deutsche Bank is named as the trustee in all four actions, the trust on whose behalf Deutsche Bank filed suit in Sigler I is clearly not the same as the trust on whose behalf Deutsche Bank filed Sigler II, III, and IV. In fact, it appears from the record that the trust named in Sigler I did not exist. Given that a trust is a distinct legal entity and that Deutsche Bank was named as a plaintiff in a representative capacity only, we conclude that Sigler I does not share an "identity of parties" with the subsequently filed foreclosure actions against the Siglers. Consequently, we hold that none of the subsequently filed foreclosure actions against the Siglers can be considered a refiling of Sigler I.

¶ 40    We next address whether Sigler IV, the instant foreclosure action, was the second refiling of Sigler II. Deutsche Bank's main argument on the issue is: "[W]here an installment contract requiring multiple payments is at issue—as it is here—a case based on one missed payment is not the same cause of action as a second case based on a different missed payment." In other words, Deutsche Bank contends that Sigler II and IV are not the same as Sigler III because they allege different default dates.

¶ 41    The Siglers respond that they only defaulted once—March 1, 2008—after which Deutsche Bank accelerated the note and made the entire principal amount due. They assert that they never made another payment on the loan after the initial default on March 1, 2008, and the loan

- 7 -

was never reinstated. As such, they contend Sigler IV is based on the same operative facts as Sigler II and III. We agree.

¶ 42     "The general rule is that where a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment as it becomes due." *Thread & Gage Co. v. Kucinski*, 116 Ill. App. 3d 178, 184 (1983); see also *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991). However, there is a "different rule" in situations

> "where the acceleration provision of the contract provides that payment of the entire debt upon default is automatic, or where the acceleration provision is optional and the creditor unequivocally exercises the option ***; it is sometimes held in those instances that the statute of limitations begins to run immediately upon default." *Kucinski*, 116 Ill. App. 3d at 184-85 (citing 18 Samuel Williston, A Treatise on the Law of Contracts § 2027 (3d ed. 1978), and 4 Corbin on Contracts § 951 (1951))

See 735 ILCS 5/13-206 (West 2008) ("[A] cause of action on a promissory note payable at a definite date accrues on the due date or date stated in the promissory note or the date upon which the promissory note is accelerated ***.").

¶ 43     Here, after the Siglers defaulted by failing to make the March 1, 2008, payment, Deutsche Bank sent a notice demanding payment "of the total amount due and owing as of [May 2, 2008]" and informed the Siglers that they could cure the default by paying the total amount due "within thirty (30) days" from May 2, 2008. The notice further stated that, if the Siglers failed to cure the default within 30 days, "[Deutsche Bank] will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." It is undisputed that the Siglers did not cure the default or make any subsequent payments. Then, on June 13, 2008, less than two weeks after the Siglers failed to cure their default, Deutsche Bank filed Sigler I, seeking repayment of the entire principal amount ($681,000.00), plus interest and other fees. In other words, Deutsche Bank accelerated the note.

¶ 44     Having determined that Deutsche Bank accelerated the note following the Siglers' March 1, 2008, default, we must next determine how that acceleration impacts our analysis under the single-refiling rule. The Siglers maintain that Deutsche Bank's acceleration replaced their obligation to repay the note in monthly installments over a period of 30 years with an obligation to pay the entire principal balance plus interest. They contend that, as a result, they committed only one default that could form the basis for a cause of action, and as a consequence, Sigler IV is the improper second refiling of Sigler II and III because they each arose from the same set of operative facts.

¶ 45     Deutsche Bank takes the position that accelerating the note in this case is irrelevant for purposes of the single-refiling rule because Sigler III alleged a different default date than Sigler II and IV. It contends that, as a result, the evidence required to prove a default in Sigler II and IV would be different than the evidence required to prove a default in Sigler III. Given the different default dates, Deutsche Bank maintains that the three actions do not arise from the same set of operative facts and that Sigler IV is, at most, the first refiling of Sigler II.

¶ 46     The supreme court has yet to weigh in on this issue; however, both parties have cited decisions from foreign jurisdictions that support their respective positions. We examine each of those decisions.

¶ 47     The Siglers cite *Johnson v. Samson Constr. Corp.*, 1997 ME 220, 704 A.2d 866, and *U.S. Bank National Ass'n v. Gullotta*, 120 Ohio St. 3d 399, 2008-Ohio-6268, 899 N.E.2d 987, in support of their position. In *Johnson*, the Maine Supreme Court considered a situation where a lender initiated a foreclosure action in August 1990 for the full amount due under a note, as permitted by the acceleration clause of the note, after the borrower defaulted on a May 1990 payment. *Johnson*, 1997 ME 220, ¶ 3. In December 1994, the trial court dismissed the action with prejudice because the mortgagee failed to comply with a court order to file a report of conference of counsel. *Id.* In August 1995, the mortgagee filed a second suit, alleging failure to make payments from September 1990 onwards and seeking judgment for the " 'amount due under the Note.' " *Id.* ¶ 4. The trial court granted summary judgment in favor of the borrower on *res judicata* grounds. *Id.* The Maine Supreme Court affirmed, finding as follows:

> "The promissory note between [the parties] required 240 equal monthly payments of principal and interest. However, the note's acceleration clause provided that '[i]f any default be made in any payment under this Note, and if such default is not made good within thirty (30) days after written notice of same, the entire unpaid principal and accrued interest shall become immediately due and payable without further demand.' *** [The lender's] first cause of action alleged that [borrower] 'defaulted on its obligations to the [lender] under the Note' and demanded payment of the entire unpaid principal balance. This suit was an action for the accelerated debt. Once [the lender] triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note. [Citations.] The court's dismissal with prejudice of the first action operated as an adjudication on the merits. [Citation.] That judgment bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that [the borrower] defaulted on the note and that [the lender] is entitled to a judgment for the amount due under the note. [The lender] cannot avoid the consequences of his procedural default in this second lawsuit by attempting to divide a contract which became indivisible when he accelerated the debt in the first lawsuit." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 8.

¶ 48     In *Gullotta*, 2008-Ohio-6268, the Ohio Supreme Court reached a similar conclusion. In *Gullotta*, the borrower filed a motion to dismiss the lender's third action—which sought a money judgment, foreclosure, and other relief after the lender declared the entire debt was due under an acceleration clause—on the ground that the lender's two prior actions against him had been voluntarily dismissed. *Id.* ¶ 2. Under an Ohio rule, a second voluntary dismissal constitutes an adjudication on the merits. *Id.* ¶¶ 20-23. The trial court found that, because the lender's amended complaint included defaults after the second dismissal, *res judicata* did not apply, as the borrower's obligation to continue making payments would " 'begin again' " in the month following the second dismissal. *Id.* ¶¶ 9-10. The intermediate appeals court affirmed, agreeing that claim preclusion did not bar the new action because it pled dates of default not litigated in the prior two actions. *Id.* ¶¶ 11-13.

¶ 49     The Ohio Supreme Court reversed. The court began by emphasizing the following "significant" facts: (1) the underlying note and mortgage "never changed," (2) in the first action, the bank "accelerated the payments owed and demanded the same principal payment that it demanded in every complaint," (3) the borrower never made an additional payment after his first default, and (4) the lender never reinstated the loan. *Id.* ¶ 19. The court stated that

"[o]nce [the borrower] defaulted and [the lender] invoked the acceleration clause of the note, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note." *Id.* ¶ 31. The court found that it was irrelevant that interest was sought only from the period after the second dismissal because, from the time of the original breach, the borrower had "owed the entire amount of the principal," the same amount of which was alleged in all three complaints. *Id.* ¶ 28. The court expressed concern that to hold otherwise would render the "two-dismissal rule meaningless in the context of foreclosure actions because every successive attempt to foreclose a mortgage could be construed as a new claim." (Internal quotation marks omitted.) *Id.* ¶ 32. The court further noted that there were situations where a third foreclosure claim would be sufficiently different under the two-dismissal rule, such as where "the underlying agreement had significantly changed or the mortgage had been reinstated following the earlier default." *Id.* ¶ 33.

¶ 50    Deutsche Bank, however, cites decisions in other jurisdictions reaching the opposite conclusion. In *Singleton v. Greymar Associates*, 882 So. 2d 1004 (Fla. 2004), the Florida Supreme Court was asked to resolve the conflict between two intermediate appellate courts on the issue of whether *res judicata* bars a subsequent foreclosure action where the prior adjudication on the merits involved an accelerated note. The Florida Supreme Court ultimately concluded that "[a] final adjudication in a foreclosure action that also prays for a deficiency judgment on the underlying debt may, but does not *necessarily*, bar a subsequent action on the debt." (Emphasis in original and internal quotation marks omitted.) *Id.* at 1005-06. The court offered the following explanation in support of its conclusion:

> "While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue. [Citations.] For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, an adjudication denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven." *Id.* at 1007.

¶ 51    The court further explained:

> "This seeming variance from the traditional law of *res judicata* rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the [rule precluding subsequent foreclosure actions if the prior action involved an acceleration] would result in unjust enrichment or other inequitable results. If *res judicata* prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note—merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent

default payment solely because he failed to prove the earlier alleged default." *Id.* at 1007-08.

¶ 52     In *Afolabi v. Atlantic Mortgage & Investment Corp.*, 849 N.E.2d 1170, 1172 (Ind. Ct. App. 2006), the mortgagee's first foreclosure action against the mortgagor had been dismissed with prejudice for want of prosecution. Several years later, the mortgagee filed a new foreclosure action against the mortgagor, who had not made any payments toward the underlying debt in over 10 years. The mortgagor argued that the mortgagee's first action was predicated on an acceleration of all payments due under the note and mortgage and a demand for payment, necessarily including all future payments. *Id.* at 1174. Because the mortgagee's claim had been dismissed with prejudice, the mortgagor argued that the mortgagee was barred from pursuing the second claim on *res judicata* grounds. *Id.* The court rejected this argument, concluding that claim preclusion does not bar successive foreclosure claims, regardless of whether the mortgagee sought to accelerate payments on the note in the first claim, where subsequent and separate alleged defaults under the note create a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action. *Id.* at 1175.

¶ 53     After review, we conclude that Sigler IV does arise from the same set of operative facts as Sigler II and III. Once the Siglers defaulted on the note and Deutsche Bank both invoked the acceleration clause and filed a foreclosure action, the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note. In the instant case, the earliest date on which Deutsche Bank could have accelerated the note is June 2, 2008, which is 30 days after it sent a notice of default and acceleration to the Siglers, stating that the note would be accelerated if the default was not cured within that time frame. Sigler I also evidences that the note had been accelerated by at least June 13, 2008, the date it was filed, because Sigler I sought the entire principal balance, plus interest. Moreover, even if we were to find that the filing of Sigler I did not evidence acceleration because it was filed on behalf of a different plaintiff, clearly the filing of Sigler II evidences that the note was accelerated no later than October 21, 2011, the date it was filed, seeking the entire principal balance plus interest. We, therefore, find that Sigler IV arose from the same set of operative facts as Sigler II and III because Deutsche Bank accelerated the note no later than the date it filed Sigler II, and it is undisputed that the Siglers never made any payments following their March 1, 2008, default, the underlying note and mortgage never changed, the note was never reinstated, and Deutsche Bank sought the same principal amount in Sigler II, III, and IV.

¶ 54     We also note that the cases cited by Deutsche Bank are not in tension with our holding because they are distinguishable; namely, in each case cited by Deutsche Bank, the mortgagor prevailed in the first foreclosure action. In other words, Deutsche Bank cites cases that stand for the following proposition: When a mortgagor prevails in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or by a dismissal with prejudice, the result is to place the mortgagor and mortgagee back in the same contractual relationship with the same continuing obligations. As a result, a subsequent default by the mortgagor would result in a separate cause of action. We do not disagree. However, this is not the situation that we are confronted with in this case because Deutsche Bank voluntarily dismissed each of its prior foreclosure actions against the Siglers.

¶ 55     Deutsche Bank nevertheless argues that we should find that Sigler III is based on a different set of operative facts than Sigler II and Sigler IV because Sigler III was filed after sending a grace-period notice pursuant to section 15-1502.5 of the Code (735 ILCS 5/15-1502.5 (West

2010)), which it failed to send before filing Sigler II. According to Deutsche Bank, its failure to send the grace-period notice before filing Sigler II meant that the Siglers had a defense available to them in Sigler II that they no longer had available in Sigler III, which in turn amounts to a different set of operative facts. We find this argument unpersuasive. Deutsche Bank's failure to follow the applicable statute before filing Sigler II does not alter the operative facts as set forth above that form the basis for each of its foreclosure actions against the Siglers, including Sigler III.

¶ 56    We likewise find unpersuasive Deutsche Bank's argument that Sigler IV arose from a different set of operative facts than Sigler II and III because of a second "notice of default" it sent to the Siglers on August 18, 2015. According to Deutsche Bank, this second notice of default "un-accelerated" the note, and therefore, the Siglers' failure to cure the second default created a new cause of action, which was the basis of Sigler IV. In response, the Siglers deny that they ever received such a notice and point out that it was sent while Sigler III was still pending. They also argue that this court should disregard the notice because Deutsche Bank produced the notice for the first time as an attachment to its amended motion for summary judgment. Even accepting as true that Deutsche Bank sent out such a notice, it does not change our analysis. As Deutsche Bank acknowledges in its reply brief, the second notice simply "informed the Siglers they could reinstate the loan for less than the full amount due" and "offered reinstatement for $466,327.79." There is no evidence that the Siglers accepted Deutsche Bank's offer to reinstate the note. Consequently, Deutsche Bank's acceleration of the note remained in effect.

¶ 57    Lastly, we also find unpersuasive Deutsche Bank's argument that each of the foreclosure complaints sought different amounts of interest and, therefore, the complaints each alleged different operating facts. As mentioned, there was only one default by the Siglers, followed by a failure to cure that default and an acceleration of the note. The amount of interest sought by Deutsche Bank was entirely dependent on when they filed their complaints, as interest kept accruing on the note. Allowing Deutsche Bank to circumvent the single-refiling rule simply by changing the date from which it sought accrued interest would mean that Deutsche Bank's claims would never be barred by any prior adjudication because interest kept accruing as time passed following the initial default. See *Webster Bank, N.A.*, 2019 WL 1227835, at *4; see also *Gullotta*, 2008-Ohio-6268, ¶ 37 (finding that allowing plaintiffs to "save their claims from the [single-refiling] rule simply by changing the relief sought in their complaint" "would be like allowing a plaintiff in a personal-injury case to save his claim *** by amending his complaint to forgo a couple of months of lost wages").

¶ 58    Accordingly, we affirm the circuit court's orders granting the Siglers' motion to reconsider its September 7, 2017, order and dismissing Deutsche Bank's complaint in the instant action for violating the single-refiling rule.

¶ 59    Affirmed.