2023 IL App (1st) 220772-U

No. 1-22-0772

Order filed September 14, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.) and JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | 2021 M1 702659 |
| MARK H. BARINHOLTZ an individual and MARK H. BARINHOLTZ, P.C., an Illinois corporation, | ) ) ) | Honorable |
| Defendants-Appellants. | ) ) ) | Gerardo Tristan, Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in awarding a monetary judgment for use and occupancy, and did not abuse its discretion in awarding attorney fees and costs. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    55 West Monroe LLC (West Monroe), the former owner of property located at 55 West Monroe Street, Suite 3600, Chicago (the Premises), executed a lease (Master Lease) with Wolin,

Kelter & Rosen Ltd. (Wolin) as its tenant. In September 2009, Wolin executed a sublease (Wolin sublease) wherein it sublet a portion of the Premises to Mark H. Barinholtz d/b/a Mark H. Barinholtz, P.C. (Barinholtz). Wolin and West Monroe consented to the sublease by executing a Consent to Sublease Agreement (Consent Agreement). The Consent Agreement was conditioned upon Barinholtz's agreement to be bound by the terms and provisions of the Master Lease. The Consent Agreement and Master Lease were assigned to John Hancock Life Insurance Company (Hancock), upon its purchase of the Premises in late 2014.

¶ 4     Wolin eventually defaulted on the Master Lease by failing to make the required payments. Section 5 of the Consent Agreement provided that in the event Wolin defaulted "under any of the terms and provisions of the Master Lease," Hancock, as landlord, "may elect to receive directly" from the subtenants all sums "due and payable" to Wolin under the Wolin sublease. Section 5 further provided that "upon receipt of the Landlord's notice," the subtenants "will thereafter pay to Landlord any and all sums becoming due or payable under the" Wolin sublease.

¶ 5     On January 19, 2021, Hancock notified Barinholtz of Wolin's default. Hancock informed Barinholtz that pursuant to section 5 of the Consent Agreement, it had elected to collect directly from Barinholtz all sums payable by Barinholtz to Wolin under the sublease. Barinholtz subsequently failed to make rent payments to Hancock when they became due. Wolin vacated the Premises in March 2021.

¶ 6     Hancock served Barinholtz with a 30-day notice on April 12, 2021, informing him that his subtenancy would be terminated effective May 31, 2021. Other subtenants of Wolin received similar notices. Some of these subtenants entered into new agreements with Hancock, while others vacated the Premises in accordance with the notices. Barinholtz was the only subtenant who refused to pay Hancock rent, while at the same time, refusing to vacate the Premises.

¶ 7      On July 19, 2021, Hancock filed a one-count complaint against Barinholtz for breach of the Consent Agreement. The complaint alleged that Barinholtz breached the agreement by failing to pay Hancock rent as provided in the Wolin sublease. Hancock sought possession of the Premises occupied by Barinholtz, along with money damages, costs, and attorney fees.

¶ 8      Hancock terminated the Master Lease on December 10, 2021. Thereafter, the parties engaged in motion practice and discovery resulting in the following trial court orders which Barinholtz challenges on appeal: (1) an order directing Barinholtz to pay Hancock certain sums for its use and occupancy of the Premises pending trial; (2) an order granting Hancock's motion for partial summary judgment for possession of the Premises occupied by Barinholtz; (3) an order granting Hancock's motion for summary judgment for unpaid rent; (4) an order granting Hancock's motion for summary judgment on Barinholtz's various counterclaims; and (5) an order awarding Hancock $46,368.75 in attorney fees and $749.59 in expenses.

¶ 9                                    II. ANALYSIS

¶ 10                           A. Illinois Supreme Court Rule 341

¶ 11      As a threshold matter, we address Hancock's contention that Barinholtz's statement of facts should be stricken for failing to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). "Rule 341 governs the form and content of appellate briefs." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Rule 341(h)(6) provides that an appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 12      A review of Barinholtz's statement of facts reveals that it contains argumentative comments and inaccurate assertions in violation of Rule 341(h)(6). Moreover, some statements

fail to cite to pages in the record. We also note that some of Barinholtz's arguments are disorganized and, at times, difficult to follow.

¶ 13    "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). "The purpose of the rules is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. This court has the discretion to strike a party's statement of facts which fails to comply with Rule 341. *Id*. at ¶ 9.

¶ 14    Here, we exercise our discretion and decline to strike Barinholtz's statement of facts, as they are sufficient for our review. However, we disregard any unsupported statements of fact or argument. *Deutsche Bank Trust Company Americas v. Sigler*, 2020 IL App (1st) 191006, ¶ 28; *In re Marriage of Ash*, 2012 IL App (1st) 200901, ¶ 32.

¶ 15    We also decline to address arguments that are undeveloped or are so poorly articulated as to prevent meaningful review. Issues that are ill-defined and insufficiently presented are considered waived pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). See *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 6. This rule provides that arguments "shall contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on." *In re Marriage of Vondra*, 2013 IL App (1st) 123025, ¶ 13 (quoting Rule 341(h)(7)).

¶ 16    We admonish counsel to comply with supreme court rules in future appeals to this court. *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 33. With these considerations in mind, we turn to Barinholtz's arguments.

¶ 17                                    B. Use and Occupancy

¶ 18    Barinholtz challenges the trial court's ruling requiring him to pay Hancock use and occupancy payments pending trial. Use and occupancy is an equitable remedy utilized by courts during the pendency of litigation to afford fair protection to the tenant through possession and to the landlord through use and occupancy payments. See *Eli Haddad Corp. v. Cal Redmond Studio*, 102 A.D.2d 730, 731, 476 N.Y.S.2d 864, 865-66 (1984).

¶ 19    In Illinois, a landlord's right to receive use and occupancy payments during the pendency of a forcible entry and detainer action is codified in section 9-201 of the Forcible Entry and Detainer Act (Eviction Act) (735 ILCS 5/9-201 (West 2018)).[1] See *Rotheimer v. Arana*, 384 Ill. App. 3d 569, 577 (2008); *Circle Management, LLC v. Oliver*, 378 Ill. App. 3d 601, 608 (2007). "Use and occupancy awards are authorized under the Act because '[a] lessee's obligation to pay rent continues as a matter of law, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises, or obtain other relief.' " *Circle Management*, 378 Ill. App. 3d at 608 (quoting *People ex rel. Department of Transportation v. Cook Development Co.*, 274 Ill. App. 3d 175, 180 (1995)).

¶ 20    A trial court's decision to order use and occupancy payments is reviewed for abuse of discretion. *Brackett v. Sedlacek*, 116 Ill. App. 3d 978, 984 (1983). A court abuses its discretion only when its ruling is arbitrary, fanciful, unreasonable, or where it rests on an error of law. *Urban Partnership Bank v. Chicago Title Land Trust Co.*, 2017 IL App (1st) 162086, ¶ 15.

¶ 21    Barinholtz contends that when Hancock filed its motion to dismiss his counterclaims pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2000)),

---

[1]Effective January 1, 2018, the Forcible Entry and Detainer Act was renamed the Eviction Act.

this had the effect of admitting all of the factual allegations contained in the counterclaims.[2] Barinholtz asserts that the factual allegations in his counterclaims establishes that Hancock was not entitled to use and occupancy. We must disagree. Hancock's filing of the motion to dismiss does not have the effect Barinholtz attributes to it.

¶ 22 The presumption of admission arising from the filing of a motion to dismiss pursuant to section 2-615 of the Code is limited. A motion to dismiss under section 2-615 admits only well pleaded facts (*Van Duyn v. Smith*, 173 Ill. App. 3d 523, 538 (1988)), and those well pleaded facts are admitted only for the purpose of ruling on the motion. See *O'Fallon Development Co. v. Ring*, 37 Ill. 2d 84, 88 (1967) (noting that a motion to dismiss admits well pleaded facts only for the purpose of determining whether, as a matter of law, those facts state a claim upon which relief may be granted). Therefore, admitting facts for the purpose of a section 2-615 motion does not forever bind a party to those admissions. The trial court was not precluded from ordering use and occupancy because of Hancock's acknowledgements made in its section 2-615 motion.

¶ 23 Barinholtz next claims that Hancock used the COVID-19 pandemic "as an unfair pretext to significantly overreach on rents" in an effort to wrongfully oust him "from maintaining his long-standing Loop office address." He cites to the Illinois Retaliatory Eviction Act (765 ILCS 720/1 *et seq*. (West 2020)) and argues that Hancock was motivated by a retaliatory intent "to boost rents beyond fair market value and collect an unjust, unlawful debt." Barinholtz also contends that the trial court "self-calculated and imposed an erroneous, but hefty use and occupancy award." These arguments are speculative. Nothing in the record supports these contentions and this court will not engage in speculation.

---

[2] Barinholtz brought counterclaims against Hancock for: constructive eviction; "wrongfully attempting to evict;" retaliatory eviction; "attempt to collect an unlawfully claimed debt;" unjust enrichment; and breach of contract.

¶ 24    A review of the record demonstrates that the court-ordered use and occupancy payment of $1250 per month is the same amount Barinholtz agreed to pay as monthly rent under the Wolin sublease. Barinholtz presents no evidence demonstrating that the pandemic or resulting executive orders should have been relied upon by the trial court in determining an appropriate amount of use and occupancy payments. In addition, he has provided no evidence that the trial court utilized an improper methodology in calculating the use and occupancy award.

¶ 25    Next, Barinholtz contends the trial court should have stayed the use and occupancy payments pending trial and set a trial date following further discovery. We disagree. This court has upheld use and occupancy orders entered without an evidentiary hearing. See *People ex rel. Department of Transportation v. Cook Development Co.*, 274 Ill. App. 3d 175, 180 (1995).

¶ 26    Upon review, we find no abuse of discretion by the trial court in granting Hancock's motion for use and occupancy payments during the pendency of the forcible entry and detainer action. In addition, we reject Barinholtz's suggestion that the trial court should have decided the issue of possession of the Premises prior to deciding the motion for use and occupancy.

¶ 27                              C. Summary Judgment

¶ 28    Barinholtz challenges the trial court's entry of summary judgment in favor of Hancock, dismissing his counterclaims and granting possession of the Premises to Hancock. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the

pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993).

¶ 29    "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 470 (2010). Our review of a summary judgment order is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 30    Barinholtz argues that his counterclaims raised triable issues of material fact concerning possession of the Premises, which precluded granting summary judgment in favor of Hancock on the issue of possession. We disagree.

¶ 31    The purpose of the Eviction Act "is to provide a speedy remedy to allow a person who is entitled to the possession of certain real property to be restored to possession." *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14. The only factual questions that need be answered in an eviction action are " 'which party is entitled to immediate possession and whether a defense which is germane to the distinctive purpose of the action defeats plaintiff's asserted right to possession.' " *Milton v. Therra*, 2018 IL App (1st) 171392, ¶ 23 (quoting *First Illinois Bank & Trust v. Galuska*, 255 Ill. App. 3d 86, 90 (1993)).

¶ 32    Section 9-106 of the Eviction Act provides in part that "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/9-106 (West 2014); see *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971 (1994) ("Matters not germane to the issue of possession may not be litigated in

a forcible entry and detainer action"). "Claims which are germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; and (4) claims questioning the plaintiff's motivation for bringing the action." *Avenaim v. Lubecke*, 347 Ill. App. 3d 855, 862 (2004).

¶ 34 In support of his counterclaims, Barinholtz advances arguments which are factually incorrect, conclusory, or are not germane to the issue of possession. Barinholtz discusses COVID-19 and the corporate history of Hancock, and describes discussions about possibly entering into a direct agreement to lease space from Hancock. The contents of these discussions are not germane to the motion for summary judgment and possession of the Premises.

¶ 35 Barinholtz argues that Hancock's verified answers to his counterclaims refute Hancock's contention that there are no genuine material facts in dispute. Barinholtz, however, fails to identify which of Hancock's answers created an issue of fact as to possession. Unsupported, conclusory statements are insufficient to create an issue of fact to defeat a motion for summary judgment. *Village of Montgomery v. Aurora Township*, 387 Ill. App. 3d 353, 365 (2008).

¶ 36 Barinholtz contends that Hancock's complaint was misleading because it made repeated references to the Master Lease and sublease, which he claims, "created an aura" that these documents, rather than the Consent Agreement, "formed the basis for the action." This argument misstates the facts. Hancock filed a one-count complaint against Barinholtz for breach of the Consent Agreement. The complaint alleged that Barinholtz breached the agreement by failing to pay Hancock rent due under the Wolin sublease. The factual allegations in the complaint were not misleading.

¶ 37    Barinholtz urges this Court to apply the "mend-the-hold" doctrine, a common law doctrine which limits the right of a party in a contract suit to change its position mid-litigation. *Montogomery Ward & Company, Inc. v. Home Insurance Co.*, 324 Ill. App. 3d 441, 451 (2001). Barinholtz claims that Hancock improperly sought to mend the hold midway through the litigation by initially alleging that there was a breach of the lease agreement and then later changing its position to allege that there was no lease agreement between Barinholtz and Hancock.

¶ 38    The facts presented here do not support application of the doctrine. The record demonstrates that Hancock's position in its complaint and throughout the litigation was that Barinholtz breached the Consent Agreement by failing to pay rent due under the Wolin sublease. Hancock never changed its position during the litigation.

¶ 39    The undisputed facts show that the Wolin sublease, under which Barinholtz was a tenant of the Premises, expired by its own terms in September 2011, and subsequently terminated following the termination of the Master Lease in December 2021. A sublease expires upon termination of the master lease. *Arendt v. Lake View Courts Associates*, 51 Ill. App. 3d 564, 566 (1977). Barinholtz had no lawful basis to occupy the Premises after the Wolin sublease expired and was subsequently terminated.[3]

¶ 40    Here, none of Barinholtz's arguments in support of his counterclaims are germane to the issue of Hancock's right to possession of the Premises. Therefore, we find that the trial court did not err in granting summary judgment in favor of Hancock.

¶ 41                            D. Attorney Fees

¶ 42    The trial court awarded Hancock attorney fees and costs pursuant to section 11 of the Consent Agreement which provides:

---

[3]Barinholtz informs this court that, under protest, he moved out of the Premises on January 28, 2023.

"In the event of any litigation between the parties hereto with respect to the subject matter hereof, the unsuccessful party agrees to pay the successful party all costs, expenses and reasonable attorney's fees incurred therein by the successful party, which shall be included as a part of the judgment therein rendered."

¶ 43    A trial court's decision to award attorney fees is reviewed for abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. Barinholtz raises several arguments challenging the award of attorney fees. He argues that pursuant to the "Illinois Strict Construction Rule," Hancock's petition for attorney fees should be strictly construed. He argues that the invoices Hancock submitted to the trial court were improper because they were "heavily redacted" and billed in increments of tenths of an hour. These arguments do not persuade us that the trial court abused its discretion by awarding Hancock attorney fees and costs.

¶ 44                                    III. CONCLUSION

¶ 45    We have considered Barinholtz's remaining arguments and find them to be either meritless or irrelevant. For the foregoing reasons, the trial court's judgments are affirmed in all respects.

¶ 46    Affirmed.